[Civ. No. 640. Third Appellate District.—February 9, 1910.]

MARY SHIELS, as Administratrix with Will Annexed of BERNARD SHIELS, Deceased, Respondent, v. I. C. NATHAN, as Administrator of Estate of MICHAEL SHIELS, Deceased, Appellant.

WILL BY HUSBAND TO EXECUTOR—CONVEYANCES—DISTRIBUTION—FRAUD UPON WIFE—APPOINTMENT OF WIFE AS ADMINISTRATRIX—ACTION AGAINST EXECUTOR'S ESTATE.—Where the executor of the will of a deceased husband was the sole devisee of his estate, and obtained distribution of his estate, and afterward died, the widow, who both had an agreement of separation upon supposed equal division of the community property, and had an allowed claim against the hus-

band's estate, may be appointed administratrix of her deceased husband's estate, for the purpose of enabling her to sue for fraud upon her rights as wife and creditor to recover land fraudulently conveyed by her husband to his brother, who became his executor, to defeat her rights as wife and creditor; and the court was not required to do the futile act of setting aside the discharge of the deceased executor, as a condition of seeking further estate of the deceased husband, by the appointed administratrix.

ID.—JURISDICTION OF COURT TO ISSUE SUBSEQUENT LETTERS.—Under section 1698 of the Code of Civil Procedure, the final settlement of an estate does not prevent a subsequent issue of letters if other property be discovered, or if it becomes necessary and proper for any cause that letters should again be issued. The jurisdiction of the court over the estate continues as to subsequently discovered property of the deceased.

ID.—ACTION BY ADMINISTRATRIX—PLEADING—ADMISSION OF DUE APPOINTMENT.—In the action by the administratrix of the deceased husband's estate, to reach real estate fraudulently conveyed by the husband to his brother, against the estate of the deceased brother, where she alleges her due appointment as administratrix by the court, and such allegation is not denied in the answer, it stands admitted for the purposes of the action.

ID.—STATUS OF ALLOWED CLAIM OF ADMINISTRATRIX.—The allowed claim of the administratrix against the estate of her deceased husband, gave it the status of an acknowledged debt of his estate payable in due course of administration, and is *prima facie* evidence of its correctness.

ID.—CONTEST OF CLAIM—BURDEN OF PROOF.—The correctness of the allowed claim may be contested by any person interested in the estate; but the burden is upon the party contesting it to show that the claim was not properly allowed.

ID.—RULE OF CONTEST APPLICABLE TO ACTION BY ADMINISTRATRIX AS CREDITOR TO REACH PROPERTY FRAUDULENTLY CONVEYED.—The same rule of contest and burden of proof applies to an action by the administratrix as creditor of the estate to reach property fraudulently conveyed by the decedent, under the provisions of section 1589 of the Code of Civil Procedure, who pleads her approved claim in support of the action.

ID.—EFFECT OF ALLOWED CLAIM AGAINST PERSONS NOT PARTIES.—Subject to the right of an interested party to have the allowance of a claim set aside for cause, all the world are parties to the probate proceedings, and are bound thereby, where the probate proceedings have been regularly pursued.

ID.—BASIS OF CLAIM—FRAUD OF SEPARATION AGREEMENT—DISCOVERY OF CONCEALED MONEY—STATUTE OF LIMITATIONS.—Where the allowed claim is based upon money concealed by the husband in fraud

of a separation agreement, and is allowed for one-half of such money, the basis of the claim is the discovery of the facts constituting the fraud, and the three years' limitation of action on the allowed claim did not begin to run until the alleged discovery of the facts constituting the fraud in concealing the money.

Id.—Sufficiency of Complaint to Set Aside Fraudulent Conveyance.—*Held,* that the complaint states a sufficient cause of action to set aside the conveyance to the executor as brother of the deceased husband, as a fraud upon her rights, both under the separation agreement and as an existing creditor of the husband; that it shows no laches nor bar of the statute, and that both a general and special demurrer thereto was properly overruled.

Id.—Action of Court in Allowing Claim—Presumed Evidence in Support of Claim.—It must be presumed that before or at the time of the action of court in allowing the claim, it heard evidence in support of the facts averred in the claim, and found them to be true.

Id.—Presumption not Overcome—Support of Action.—Where the defendant offered no evidence tending to dispute the facts presumptively determined by the court in approving the claim, and the only defense presented is the statute of limitation and laches, the action must be sustained if such defense is unsupported.

Id.—Absence of Notice to Creditors.—Where the executor, deceased, did not, while acting as executor of the estate of the husband, publish any notice to creditors of the estate, the allowed claim was not barred in the course of administration.

Id.—Confidential Relation—No Presumption of Laches of Wife.—Where the allowed claim shows that the wife, notwithstanding the agreed separation, reposed confidence in the integrity of her husband, and fully believed that he set forth all of the community property which was the basis of the division prior to her discovery of the facts constituting concealed fraud, it must be assumed that the court found as a fact that such confidence existed, and there is no presumption that she was guilty of laches in not discovering the facts sooner.

Id.—Presumption of Husband's Knowledge of Community Property—Right of Wife to Trust Husband.—The husband, being entitled to the custody and control of the community property, presumably knew all about it, while no such presumption attaches to the wife. Accepting the settlement in the belief that her husband had returned all the community property, she had the right to rest in that belief, and was not required to pursue an independent search for other property until it was incidentally called to her notice.

Id.—Date of Actual Discovery—Claim not Barred—Absence of Proof.—Where there is no evidence of any facts or circumstances from which it might be inferred that the widow knew or had any

reason to believe that her husband had deceived her prior to the actual discovery, of the facts constituting the fraud, and the action was brought within three years from that date, it is not barred by the statute of limitations.

ID.—PRESENTATION OF CLAIM AFTER EXECUTOR'S DEATH—DEED TO EXECUTOR WITHOUT VALUE—NO SHOWING OF PREJUDICE.—Notwithstanding the claim of the widow was not allowed until after the executor's death, where the fraudulent deed sought to be set aside against his estate was conveyed by the husband without value, or other consideration than love and affection, mere lapse of time, after the discovery thereof, less than the statutory period, will not bar the claim to equitable relief against the fraudulent conveyance where there is no evidence in the record tending to show that the heirs of the deceased executor, or any creditors of his estate, will suffer prejudice by the delay in presenting the claim.

ID.—PROOF OF FRAUDULENT INTENT—INSOLVENCY OF GRANTOR—SUPPORT OF FINDING.—It must be shown that the conveyance was with fraudulent intent, notwithstanding it was made merely for love and affection. The fraudulent intent is a question of fact, and is not to be arrived at as a presumption of law. But pronounced insolvency of the grantor, as the result of the conveyance, is a strong circumstance tending to show fraudulent intent; and in the absence of other controlling facts is sufficient to justify a finding of such intent.

ID.—FRAUDULENT CONVEYANCE IN CONTEMPLATION OF INSOLVENCY.—By the terms of section 3442 of the Civil Code, any transfer "made voluntarily, or without valuable consideration, by a party while insolvent, or in contemplation of insolvency, shall be fraudulent and void as to existing creditors." In such case proof of insolvency establishes the fraudulent intent as to plaintiff as an existing creditor. It is immaterial how she became such creditor.

ID.—EFFECT OF JUDGMENT—TRANSFER OF PROPERTY TO ESTATE OF HUSBAND—SALE TO PAY CLAIM—SURPLUS TO BE RETURNED.—Where, by the judgment of the trial court, the property fraudulently conveyed was transferred to and vested in the estate of the deceased husband, the title is so vested for the purpose of sale to pay the allowed claim in favor of the deceased husband's widow as his debtor, but the surplus, if any, after such payment, cannot be retained in the husband's estate, but must be returned to the estate of the deceased executor as grantee of the husband, for the benefit of his heirs.

APPEAL from a judgment of the Superior Court of Sacramento County, and from order refusing to vacate the judgment, and denying a new trial. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

W. A. Gett, for Appellant.

Wahrhaftig, Hinkson & Elliott, for Respondent.

CHIPMAN, P. J.—This is an action, brought under section 1589 of the Code of Civil Procedure, to recover from the estate of Michael Shiels, deceased, certain real estate for the benefit of the creditors of the estate of Bernard Shiels, deceased.

It appears from the complaint that Bernard Shiels died December 31, 1902, leaving a will by which he devised all his property to Michael Shiels, naming him as executor; that Michael was duly appointed as executor, and was thereafter, to wit, November 6, 1903, discharged from his said trust; that plaintiff was duly appointed administratrix with the will annexed shortly thereafter and ever since has been and now is such administratrix; that Michael died intestate, in the state of Nevada, on December 12, 1905, leaving estate in the county of Sacramento, this state; that defendant was duly appointed administrator of his estate, April 5, 1906, by the superior court of said county and now is such administrator; that before and at his death, Bernard was indebted to Mary Shiels in the sum of $1691, with lawful interest from November 14, 1890, upon a claim arising out of an agreement of separation (the said Bernard and Mary being husband and wife) and a division of their community property theretofore had between them, "all of which will more fully appear from a copy of the claim of said Mary Shiels, which is hereto annexed (i. e., to the complaint) marked Exhibit A and is hereby referred to and made part of this complaint"; that on March 7, 1906, said Mary presented to Hon. Peter J. Shields, judge of the superior court of said county, for his approval and allowance, her said claim against the estate of said Bernard Shiels, deceased (amounting then to $3505, principal and interest), "accompanied with a statement of the facts out of which said claim arose," which said claim was, on said March 7, 1906, allowed and approved by said judge and duly filed in the office of the county clerk. It is then alleged that on December 26, 1902, said Bernard was the owner of certain described real estate referred to in the complaint, situated in said county, and also had on deposit in the Sacramento bank the sum of $1800, and that

he then owned no other property, real or personal; that on said last-named day Mary was a creditor of said Bernard, who "without any valuable or adequate consideration therefor, transferred and conveyed to the said Michael Shiels, all of the above described real estate and said sum of money so on deposit as aforesaid, and from the time of said conveyance and transfer until his death, he had no other property out of which said debt could be paid, and he thereby rendered himself insolvent and he continued to be insolvent up to the time of his death." It is further alleged that said transfer was "with fraudulent intent and purpose to hinder and defraud the said Mary Shiels, and to prevent her from resorting to said real estate and money whereby to collect and satisfy her said debt, and to avoid the payment of the same," "and that said Michael immediately thereafter removed said money without the jurisdiction of this court; that there are no assets in the hands of plaintiff nor in the estate of said Bernard Shiels, deceased, with which to pay said claim of said Mary Shiels, or to pay the costs and expenses of administering said estate, and it is necessary to recover the whole of said real estate for such purposes."

The claim referred to in the complaint and as presented and allowed reads as follows:

"In the Matter of the Estate of BERNARD SHIELS, Deceased.

"The undersigned, a creditor of Bernard Shiels, deceased, presents her claim against the estate of said deceased, with the necessary voucher for approval, as follows, to wit:

"Estate of Bernard Shiels, Deceased,

"To Mary Shiels, Dr.

"March 7, 1906. To money owing, due and unpaid from said Bernard Shiels at the time of his death, to claimant founded upon the facts set forth in the statement hereto annexed, and which is made part hereof, and is explanatory of this claim.........................$1,691.00

Interest owing, due and unpaid on said sum of $1,691.00, from the 14th day of November, 1890, to date, at the rate of seven per cent per annum ............................... 1,814.00

"Total.............................$3,505.00"

It is set forth in the claim that Bernard and Mary married on November 28, 1872, and were husband and wife until the death of Bernard, December 31, 1902; that during their marriage and up to November 14, 1890, they had, by their joint labor, accumulated "a large amount of money and other property which was then their community property"; that owing to differences then existing between them, they mutually agreed to make an equal division between them of all their said community money and other community property, and to live separate and apart from each other, and that they would select two men to make a true and correct inventory and appraisement of all their said community property, who should divide the same equally between them and that each of them should furnish to said two men "a full, true and correct statement and memorandum of all of said community money and other property, that each of them had in his or her possession and under his or her control"; that pursuant thereto claimant did on November 14, 1890, furnish to the said Bernard and the said two men a full statement of all said property in her possession or control, and the said Bernard "furnished to claimant and said two men, what he represented and stated to be, and what claimant then believed to be, a full, true and correct statement and memorandum of all said community money and other property that was then in his possession and under his control, and claimant believed, and had full confidence in said Bernard Shiels, and in his said statement and memorandum, and his assurance, that he had made to her, that said statement and memorandum contained a full, true and correct statement of all of said community money and other community property that was then in his possession and under his control; and in making a division of said community, claimant believed, and acted solely upon said representations, statement and memorandum of the said Bernard Shiels"; that said two men acted upon said statement and divided the property accordingly and believing said statement to be true claimant accepted the share set apart to her and consented to the division so made, and thereupon she and said Bernard entered into an agreement in writing to live separate and apart from each other; that from said fourteenth day of November, 1890, to the day of the death

of said Bernard, she remained separate and apart from her said husband, supported herself, and in all respects complied with said agreement of separation; that during all said time she knew nothing of Bernard's business affairs and had no means of knowing or ascertaining anything about his business matters, or of the amount of said community property in his control, and did not know or discover until after his death and until letters of administration were issued to her, on November 25, 1903, that he had money which he had concealed from her and said two men at the time of said division, but that after said letters were issued to her, to wit, on November 28, 1903, she ascertained from the Sacramento bank, in the city of Sacramento, on presenting to it her authority to act as administratrix of Bernard's estate, that on November 14, 1890, said Bernard had on deposit in said bank the sum of $3382, which was community property and which he had concealed from claimant and said two men and was not taken into account in said division and no part thereof was ever paid to her; that one-half thereof belonged to her by virtue of said agreement of separation and she was entitled thereto on said November 14, 1890, and it was due to her at the date of his death. The claim was duly verified and bore the following indorsement: "Allowed and approved for $3,505 this 7th day of March, 1906. Peter J. Shields, Judge. Filed Mar. 7, 1906. Wm. B. Hamilton, Clerk; by S. B. Keller, Deputy."

Defendant demurred to the complaint on several grounds: 1. That the court was without jurisdiction because it does not appear that defendant, as a trustee, has possession of the property; 2. That there is a defect of parties defendant in this, that Michael Shiels, died testate and his heirs are not made parties defendant; 3. That sufficient facts are not alleged to constitute a cause of action; 4. That the complaint is uncertain, unintelligible and ambiguous in this, that no copy of the claim, in form or substance, as required by section 1494, Code of Civil Procedure, is attached to the complaint; 5. That no facts are set forth in support of the averment that certain real estate was transferred "with the fraudulent purpose to hinder and defraud," etc. The complaint is demurred to also as barred by certain sections of the Code of Civil Procedure. The demurrer was overruled, properly

we think, and defendant answered, pleading the statute of limitations in bar of the action. Denials were made to the material averments of the complaint, except the averments in the first and second paragraphs thereof, in the language of the complaint. For example, the averment of the complaint that at his death Bernard was indebted to Mary in the sum of $1691, and averments in that connection are simply denied in the language of the complaint. So of the averments as to the presentation and allowance of her claim by Judge Shields. So also of the averments that there are no assets in the hands of plaintiff as administratrix of the estate of Bernard with which to pay said claim or costs and expenses of administration "and it is necessary to recover the whole of said real estate for such purpose."

A defense is pleaded on the ground that plaintiff, prior to the commencement of the action, conveyed an interest in the property described in the complaint to Messrs. Hinkson & Elliott (who are her attorneys), and that they are necessary parties to the action. This is not urged in appellant's brief and may be dismissed from consideration.

A defense is also pleaded that plaintiff knew, about the time of its execution, of the execution of the deed from Bernard to Michael, mentioned in the complaint, and is guilty of laches and should therefore not be permitted to maintain the action and is estopped thereby. The answer also pleads laches in that the complaint fails to show that plaintiff made any effort to recover said money or property until October 13, 1906, when the complaint was filed, being more than five years after Bernard bought the land in question. But the statute of limitations began to run from the date of the discovery of the fraud, which was in 1903.

The court found the averments of the complaint to be true, except that the amount of money on deposit in the Sacramento Bank was $1727.78 at the time claimed, to wit, December 26, 1902, and except also that the evidence did not show that Michael removed the money from this jurisdiction, but that Bernard did, on December 26, 1902, transfer said money to Michael and he caused the same to be transferred to his credit and on January 3, 1903, he removed the same from said bank and closed his account; that the conveyance to Michael by Bernard was voluntary

and without any valuable consideration and was made while he was in debt to Mary "with intent on his part to hinder, delay and defraud the said Mary Shiels in the collection of her said claim and to defeat the same and deprive her of her rights." The court finds against defendant as to the material averments of his answer. The judgment was that plaintiff recover "for the benefit of the creditors of Bernard Shiels, deceased, and of his estate," and that the title to the lots in question be henceforth, "without further act or proceeding, vested in the plaintiff for the purposes hereinbefore set forth, free and clear of all claims of said defendant as administrator of the estate of Michael Shiels, or any other person, or persons, claiming by, through, or under said estate of Michael Shiels, deceased, or the defendant as administrator."

Defendant gave notice that he would, on April 17, 1908, move to vacate the judgment on the ground that it was rendered through mistake, inadvertence, surprise and excusable neglect. The motion was denied and as the appeal from that order is not now pressed, it will not be considered.

Defendant also moved for a new trial on most of the statutory grounds, which motion was denied. He appeals from the judgment, from the order refusing to vacate the judgment and from the order denying his motion for a new trial.

When the cause was called for trial the court asked counsel for plaintiff, after he had read the complaint, whether the allegations of plaintiff were denied by defendant. He replied: "We admit that defendant has attempted to deny all the allegations of our complaint, except paragraphs one and two thereof, which are admitted; but we do not concede that the denials of defendant are sufficient."

Over defendant's objection, plaintiff submitted evidence showing: That the court had approved and allowed the claim as set forth in the complaint; the will of Bernard by which he devised all his property to his brother Michael, to show an intention, at the time he made the deed, to exclude plaintiff from sharing in his estate; petition of Michael, as executor of Bernard's estate, asking his discharge and to show that he therein reported to the court that he was unable to discover any property belonging to Bernard and for that reason asked his discharge; the order of discharge showing

that it was made on the ground stated in the petition; inventory in the matter of the estate of Michael showing that it returned the lots in question as part of Michael's estate, of the inventory value of $5050. It was shown by witnesses that Bernard, when making his deed to Michael, expressed the intention that his wife should have none of his property as he had made ample provision for her and she had property of her own, and that he desired that Michael should have all the property he possessed. It was also proven that on December 26, 1902, Bernard had on deposit in the Sacramento Bank $1728.78 and that he transferred the account to Michael on that day, who drew the money out January 3, 1903, and closed his account.

Defendant offered no evidence. He pleaded the deed from Bernard to Michael and the settlement contract between Bernard and his wife, which, not being denied, are deemed admitted.

Appellant urges many points in support of his contentions—that the demurrer should have been sustained; that his motion for nonsuit should have been granted and that the evidence does not support the findings. The questions in controversy are more or less involved in all these contentions and may be considered without special reference to either one in particular.

1. It is claimed that the appointment of Mrs. Shiels as administratrix of Bernard's estate was without jurisdiction for the reason that the executor (Michael) of that estate was discharged and jurisdiction over the executor and over the property of the estate was terminated. The only ground for asking the discharge or for making the order, so far as appears, was the averment in the petition, found as fact in the order, that the executor was unable to discover any property belonging to the estate. The contention is that by the discharge the court lost jurisdiction which could only be regained by setting aside the order on some sufficient ground made to appear, and, as no such step was taken, the court could not appoint an administratrix with the will annexed. Section 1698, Code of Civil Procedure, provides that the final settlement of an estate shall not prevent a subsequent issue of letters, ''if other property be discovered, or if it become necessary or proper for any cause that letters should be

again issued.'' The point is without merit. To have vacated the order discharging Michael as executor would have had the effect to restore him to his office, but he was then dead, and the order would have been futile. The jurisdiction of the court over the estate continued as to subsequently discovered property of deceased. The statute gives the court jurisdiction even ''after the final settlement of an estate,'' to subject newly discovered property to administration and this without disturbing the settlement. Furthermore, the due appointment of Mrs. Shiels was alleged in the first paragraph of the complaint and this paragraph is not denied.

2. The other questions are directly or remotely connected with the approved claim of Mrs. Shiels. It therefore becomes of the first importance to determine its status and the extent to which its approval and allowance figure in the case, since it is conceded that it was necessary for plaintiff to show that she was a creditor of the estate of Bernard, which appeared only through her approved claim.

Section 1497, Code of Civil Procedure, reads: ''Every claim allowed by the executor or administrator, and approved by a judge of the superior court, or a copy thereof, as hereinafter provided, must, within thirty days thereafter, be filed in the court, and be ranked among the acknowledged debts of the estate, to be paid in due course of administration.''

Section 1510, Code of Civil Procedure, provides: ''If the executor or administrator is a creditor of the decedent (the case here), his claim, duly authenticated by affidavit, must be presented for allowance or rejection to a judge of the superior court, and its allowance by the judge is sufficient evidence of its correctness, and must be paid as other claims in due course of administration.''

It was held in *Estate of More,* 121 Cal. 635, [54 Pac. 148], that the judgment of a court and the approval of a claim by the judge are of equal force. (See, also, *Hall* v. *Cayot,* 141 Cal. 13, [74 Pac. 299].) Section 1504, Code of Civil Procedure, practically so declares. Speaking of the judgment of the court, the court, in *Estate of More,* 121 Cal. 635, [54 Pac. 148], said: ''It did, however, establish the claim in the same manner as if it had been allowed by the judge, and was *prima facie* evidence of its correctness. The judg-

ment was, however, subject to be afterward contested by any person interested in the estate, in the same manner and to the same extent as other allowed claims might be contested. But in all such cases the burden is upon the party contesting to show that the claim was not properly allowed." (Citing *Estate of Loshe,* 62 Cal. 413; *Estate of Swain,* 67 Cal. 637, [8 Pac. 497].) In *Estate of Loshe,* the court said: "It is not necessary to consider how far the allowance and approval of a claim resemble or give the effect of a judgment; it is sufficient to say that such a claim is to 'rank among the *acknowledged* debts of the estate, to be paid in due course. If it be an acknowledged debt, it is good until cause be shown.' " In these cases the question arose at some stage of the administration, but we see no reason why the same rule should not apply where, as here, the plaintiff, as a creditor, pleads her approved claim in support of her action. To the extent of showing that she is a creditor the approved claim should be treated "as an acknowledged debt of the estate," and the burden to show otherwise should be, and we think is, upon the party assailing it. Section 1589, Code of Civil Procedure, makes it the duty of the executor or administrator to prosecute the action to recover for the benefit of the creditors of the estate all real estate fraudulently conveyed by the decedent, in his lifetime, and the action may be prosecuted by an administrator who is a creditor, even if a sole creditor.

Appellant contends that the allowance of Mrs. Shiels' claim cannot affect him, as he was a stranger to the estate and was not a party or privy thereto. (Citing *Shay* v. *McNamara,* 54 Cal. 169.) It is true that a judgment is an estoppel only as to parties and privies. But subject, however, to the right of an interested party to have the allowance of a claim set aside for cause, all the world are parties to the probate proceedings relating thereto and are bound thereby, where the probate proceedings have been regularly pursued. Let us, then, consider the attack made upon the claim of Mrs. Shiels.

3. It is claimed that the action is barred in three years by subdivision 4, section 338, Code of Civil Procedure, if it is for relief from fraud or mistake; that it is barred in two years by subdivision 1, section 339, Code of Civil Procedure,

if the claim is upon contract not founded upon an instrument in writing; and is barred in four years by section 343, Code of Civil Procedure, if the action is for relief not otherwise provided for.

It seems to us that the claim is based upon the contract entered into between Bernard Shiels and his wife as set forth in the statement of facts therewith made. We must presume that before or at the time the judge approved the claim, he heard evidence in support of the facts averred in the claim and found them to be true. Briefly, that Bernard, at the time the agreement of separation was entered into had a deposit in the Sacramento Bank of $3382, belonging to the community, which he purposely and fraudulently concealed from his wife and of which he made no account in returning to her, and to the two men chosen to divide the property, a memorandum of the community property in his possession, to one-half of which, $1691, she was entitled by the agreement, with interest to March 7, 1906, the date of filing the claim, amounting to $1814; that by the agreement each was to make a full, true and correct statement and memorandum of all the community property in possession or control of each; that claimant had full confidence in her husband and in his statement and his assurance then made to her that it contained a true and correct return of all his said property, and that in making said settlement she "believed and acted solely upon said representations and memorandum of the said Bernard Shiels," as also did the said two men chosen to make said division of the property; that she had no means of ascertaining the facts and did not discover said money so deposited until shortly after letters were issued to her, to wit, November 28, 1903, and then for the first time was informed by the officers of said bank that Bernard had money on deposit (the amount set out in the claim), at the date of the separation. The claim was admitted in evidence as presented to and allowed by the judge. Defendant offered no evidence tending to dispute any of the facts presumably determined by its approval, and the only defense now made to it is the statute of limitation and laches in failing to make due inquiry. The discovery of the fraud was made November 28, 1903, and the action was

brought within three years thereafter, to wit, October 13, 1906. While the action is upon the agreement of separation, the relief sought is for fraud—"The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Code Civ. Proc., sec. 338, subd. 4.) The action was not barred by any statute of limitation. It does not appear from the transcript that Michael, while acting as executor, or at all, filed any affidavit showing that he published notice to creditors, in the matter of the estate of Bernard, nor did it appear that Mrs. Shiels had any knowledge that notice to creditors had been published.

4. It is true that many years passed before the discovery was made by Mrs. Shiels, and it is urged that she ought to have shown that she made some effort to ascertain the facts; that available means of knowledge amount to knowledge and that there is an utter failure to show any sort of diligence in making the discovery from 1890 until 1903. The answer is that the relation of husband and wife is one of the highest degree of confidence and trust, and although in this case they had "differences," not explained, which led to their separation, the claim stated and the judge presumably found as fact, that the wife had confidence in her husband and trusted him in making return of his property. Differences might have existed without destroying confidence in each other's honesty and integrity. The husband is entitled to the exclusive possession and control of the community property and presumably knows all about it, while no such presumption attaches to the wife. Accepting the settlement upon the belief that her husband had returned all the community property she had a right to rest in that belief and was not called upon to pursue an independent search for other property; to have done so would have implied want of confidence in her husband's honesty in making return of the property, whereas her belief in and reliance upon his honesty was the ground on which she accepted the settlement. We do not know, except from the facts stated in the claim, when or how her suspicions were aroused, or when or how she came to make inquiry as to the facts; they were inquired into by the judge who allowed the claim. There is no evidence

of any facts or circumstances from which it might be inferred that she knew or had any reason to believe that her husband had deceived her at the settlement, prior to the actual discovery.

5. It is argued, as evidence of her unfairness and laches, that although she learned of the fraud in November, 1903, she delayed the presentation of her claim until after the death of her husband's brother, Michael, to whom the property in question had been conveyed by Bernard; that by his death she could not be confronted with his testimony in explanation of the conveyance. The deed shows that it was without consideration other than love and affection. Besides, it cannot be assumed, and it did not appear, that Michael knew anything about the facts existing at the time of the separation. The defense of laches is sometimes sustained although the period of delay is less than that provided by the statute of limitation. Mere lapse of time less than the statutory period of limitation will not bar action for equitable relief, unless the delay, under the circumstances, has been such as to justify the presumption that the defendant may have been prejudiced thereby. (*Ex-Mission Land Co.* v. *Flash,* 97 Cal. 610, [32 Pac. 600]; *Cahill* v. *Superior Court,* 145 Cal. 47, [78 Pac. 467]; *Cook* v. *Ceas,* 147 Cal. 614, [82 Pac. 370].) There is nothing in the record tending in the slightest degree to show that the heirs of Michael or any creditors interested in his estate have suffered or will suffer prejudice by the delay in presenting the claim.

6. It is urged that there was no evidence of actual fraudulent intent in conveying the property to Michael. The claim presented to and allowed by the judge raised no issue as to the land in question or its transfer to Michael. Only such facts or issues as were then raised are to be deemed adjudged by the allowance. The complaint avers that Mary Shiels was a creditor of Bernard at and before the date of the transfer; that "he, without any valuable or adequate consideration therefor," conveyed to Michael the land and the money on deposit, and thenceforward to the date of his death, "he had no other property out of which said debt could be paid, and he thereby rendered himself insolvent," and so continued until he died. It has been held that un-

der section 1589, Code of Civil Procedure, it must appear:
"1. That there are creditors to be paid; 2. That there is an
insufficiency of assets in the hands of the administrator to
meet their demands; and, 3. The claims of creditors must be
evidenced by a judgment obtained in this state, or they must
have been allowed by the administrator or executor, which
is the equivalent of a judgment." (*Aigeltinger* v. *Einstein,*
143 Cal. 609, 615, [101 Am. St. Rep. 131, 77 Pac. 669].)
(Of course, the approval by the judge takes the place of the
allowance by the administrator when the latter is the claim-
ant.)   Section 1589 authorizes the action "when the decedent,
in his lifetime, has conveyed any real estate, . . . with in-
tent to defraud his creditors, or to avoid any right, debt, or
duty of any person, or has so conveyed such estate that by
the law the deeds or conveyances are void as against cred-
itors."

There was evidence tending to establish the requirements
mentioned in the case cited. It was, however, necessary to
show further that the conveyance was with fraudulent in-
tent.   It was held, in *Emmons* v. *Barton,* 109 Cal. 662, [42
Pac. 302], that where the consideration was love and affec-
tion alone, it was not sufficient unless made with intent to
defraud the creditors; that the intent is a question of fact
and that a voluntary conveyance is not *prima facie* fraudu-
lent, and fraudulent intent is not to be arrived at as a pre-
sumption of law.   It was further held in that case: "Pro-
nounced insolvency at the time of the grant would, no doubt,
be a strong circumstance tending to show fraudulent intent,
and, in the absence of other controlling facts, it would be
sufficient to justify a finding of such intent."

It appeared from the evidence that Bernard was mortally
ill and in hospital when he made the conveyance and died
five days thereafter; that he declared that it was his inten-
tion to convey all the property he possessed and, so far as
known, he did so; that his brother Michael served for a
time as executor of Bernard's estate and could find no prop-
erty belonging to him and for that reason asked to be and
was discharged. We think the evidence was sufficient to
justify the finding that by the conveyance he rendered him-
self insolvent. Strictly, he was not insolvent when he made

the conveyance, but, coincidently with and by that act, he became insolvent, and this, we think, brings the case within the rule in *Emmons* v. *Barton,* 109 Cal. 662, [42 Pac. 302], and justifies the finding that the conveyance was with fraudulent intent to defraud his creditors.

Whether section 1589, Code of Civil Procedure, is to be given the same effect as section 3442 of the Civil Code, need not be decided, for, if so, by the terms of the latter section any transfer made "voluntarily, or without valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors."

In *Gray* v. *Brunold,* 140 Cal. 615, [74 Pac. 303], it was said that an allegation of intent to defraud is no longer required under section 3442, where insolvency is alleged, but in *Estate of Vance,* 141 Cal. 624, [75 Pac. 323], the court said that intent to defraud must be alleged and that the proviso in the section is a rule of evidence and not of pleading. Nevertheless, proof of insolvency establishes the intent. Here there were sufficient allegations and proof. Conceding the rule, appellant says the section does not apply here because there is "but one creditor and that creditor created by the fraud itself." This rather singular contention is based on the fact that "it was necessary to prove the fraud in the first place, before any advantage can be taken of any special presumption of fraud, in order to establish the status of the plaintiff as a creditor, so that it could be claimed that the transfer was made by an insolvent." We fail to see any force in this point. If she was a creditor, it is immaterial how she became such creditor.

7. It is urged that the judgment is erroneous because it does not conform to the provisions of the code authorizing it.

Section 1589, Code of Civil Procedure, provides that the administrator "may recover for the benefit of the creditors all such real estate so fraudulently conveyed," etc. Section 1591 provides: "All real estate so recovered must be sold for the payment of debts, in the same manner as if the decedent had died seised thereof, upon obtaining an order therefor from the court; and the proceeds, . . . must be ap-

propriated in payment of the debts of the decedent in the same manner as other property in the hands of the executor or administrator. The remainder of the proceeds, after all the debts of the decedent have been paid, must be paid to the person from whom such property was recovered.''

In *Emmons* v. *Barton,* 109 Cal. 662, 668, [42 Pac. 302, 304], it was held that in a case like this, ''the judgment should be that the property fraudulently conveyed, or so much thereof as is necessary, be applied to the satisfaction of the debts, and that the residue, if any, go to the grantee. It is not to go into the assets of the estate for any purpose other than the payment of the debts. The residue does not go to the heir; for he stands in the shoes of the fraudulent grantor.'' (See *Tully* v. *Tully,* 137 Cal. 60, 66, [68 Pac. 700].) In *Estate of Page,* 57 Cal. 238, 241, it is said: ''But the property, when recovered, must be inventoried as assets of the estate, and sold for the payment of debts, in the same manner as if the decedent had died seised thereof.'' (Citing Code Civ. Proc., secs. 1589; 1591.)

As the conveyance by Bernard Shiels was void, the statute authorized the recovery of the property and its sale for the benefit of the creditors of Bernard, and to make a sale the title would have to be vested in the administratrix. The judgment vested the title in the administratrix for the benefit of creditors, which was proper, but it also declared it to be ''free and clear of all claims of the said defendant as administrator of the estate of Michael Shiels, deceased, or any other person, or persons, claiming by, through, or under said estate of Michael, deceased, or of the defendant as such administrator.'' This was unauthorized. The heirs of Michael are entitled to the surplus, if any, after the property is sold, and the decree should so provide.

The order denying defendant's motion to vacate the judgment and the order denying his motion for a new trial are affirmed. The judgment is modified by striking out the portion last above quoted and in lieu thereof inserting the following: ''and upon the sale of said premises the proceeds thereof shall be applied to the payment of the claims of the creditors of the said Bernard Shiels, which have been or shall be duly allowed, and the residue of such proceeds shall

be paid to the administrator of the estate of Michael Shiels, deceased." and as thus modified, the judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 9, 1910, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 7, 1910.