[Civ. No. 805. First Appellate District.—July 12, 1911.]

JOHN P. McMURRAY, Respondent, v. SAMUEL P. BODWELL, as Executor of the Last Will and Testament of EVA F. CRAIG, Deceased, Appellant.

ACTION BY FATHER AGAINST ESTATE OF DAUGHTER—MISAPPROPRIATION OF MOTHER'S SAVINGS—COMMUNITY PROPERTY—CONCEALED FUND—LAPSE OF TWELVE YEARS—ACTION NOT BARRED.—An action by a father against the estate of a deceased daughter to recover therefrom a claim for the savings of the mother, alleged to be community property, and to have been taken and fraudulently appropriated by the daughter from a safe deposit box in which it was concealed by the mother without the knowledge of the father, who is alleged to have been wholly ignorant of its existence, and of the fraudulent appropriation and concealment by said daughter, until within

three months before the commencement of the action, although com-' menced twelve years after the transaction complained of, is not barred by subdivision 4 of section 338 of the Code of Civil Procedure, there being no actual or constructive discovery of the fraud until the date of discovery alleged.

Id.—Running of Statute—Fraud—Means of Knowledge.—Although the statute begins to run against fraud when the plaintiff has means of knowledge of the fraud, or when there are facts or circumstances sufficient to put a prudent man upon inquiry, yet this rule applies only when the fraud is known or ought to have been known.

Id.—Ignorance of Concealed Fraud — Lapse of Time Immaterial Until Discovery.—No lapse of time nor delay in bringing suit, however long, will defeat the remedy, provided the injured party was during all of the interval ignorant of concealed fraud. The duty to commence proceeding in such case can arise only upon his discovery of the fraud, and the possible effect of his laches will begin to run only from that time.

Id.—Rule of Pleading—Facts Brought Within Rule.—It is held that the facts pleaded in this case are brought within the rule that the pleader must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them, or that they were done in secret and kept concealed, and that he must show the time and circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged, and that the facts here alleged clearly bring the case within the exception to the statute of limitations.

Id.—Evidence of Father—Absence of Knowledge and Appropriation of Fund—Death of Parties—Construction of Code.—The evidence of the father that he did not learn until after the death of the daughter that his deceased wife had money in a safe deposit box, and that the daughter had misappropriated the same, is not within the inhibition of subdivision 3 of section 1880 of the Code of Civil Procedure, as the discovery testified to occurred after the death of the deceased parties and not prior thereto.

Id.—Community Property—Money Saved from Money Given to Wife for Support of Family.—Money saved by the wife from money furnished by the husband for the up-keep and support of the home and family is community property, in so far as such savings were not acquiesced in by the husband as the separate property of the wife.

Id.—Presumption—Burden of Proof of Agreement for Separate Property.—Such savings are presumed to be community property; and the burden of proving an understanding or agreement that

they were to be the wife's separate property was upon the defendant. It is held that the presumption was not overcome, and that the decision of the trial court was just and correct, that the property was community property, and recoverable by the husband.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

M. S. Eisner, and Harry K. Wolf, for Appellant.

Sullivan & Sullivan, and Theo. J. Roche, for Respondent.

KERRIGAN, J.—This is an action on a claim against an estate, to recover money which it is alleged was fraudulently appropriated by the defendant's testatrix.

On October 28, 1889, Margaret McMurray died. At that time and for many years prior thereto she and the plaintiff were husband and wife, living together as such. At the time of Margaret McMurray's death the family consisted of the plaintiff, Kip McMurray, a son, and two daughters—Mrs. Eva F. Craig and Mrs. Carrie I. Barrows. Plaintiff was a contracting decorator, and he earned about $5,000 a year. It was his custom to make his wife a monthly allowance for the up-keep of the house and the support of the family. Out of this monthly payment Margaret McMurray, by doing nearly all the housework herself, was enabled to save "part of the allowance," which was regarded, so one of the witnesses testified, as separate property of Margaret McMurray by both herself and her husband. In October, 1882, Eva F. Craig rented in her own name a safe deposit box in San Francisco, to which she and her mother had exclusive access. On September 3, 1886, Margaret McMurray, with the knowledge of the plaintiff, purchased a lot of land in Berkeley out of said savings, the deed to said lot being taken in her own name. At various times during her life Margaret McMurray deposited sums of money in the said safe deposit box, which at the time of her death aggregated the sum of $1,800. About a month after her decease her two daughters, at the request of plaintiff, consented that the lot in Berkeley should go to

and become the property of Kip McMurray.    About this time
Eva F. Craig told her sister, Carrie I. Barrows, of the exist-
ence of this $1,800, and, warning her to say nothing about
the matter to anyone, suggested that they divide this sum
equally between them, and also agree to the plaintiff's pro-
posal as to the disposition of the Berkeley lot, which was done.

The estate of Margaret McMurray was probated, the only
property accounted for being the said lot, which was treated
as the separate property of the deceased.    The estate being
settled, Eva F. Craig delivered to Carrie I. Barrows $900
of the said deposit, and kept the remainder.    The existence
of this fund was not divulged to anyone except to the hus-
band of Carrie I. Barrows, who, notwithstanding that he was
plaintiff's attorney in the administration of the estate of said
Margaret McMurray, and was informed of the facts surround-
ing the accumulation of the $1,800 and its disposition, con-
cealed them from the plaintiff.

On February 20, 1900, Eva F. Craig died, leaving the whole
of her estate to the defendant, to whom she was in no way
related; and plaintiff now for the first time learned from
Carrie I. Barrows the matters above related, and thirty days
thereafter presented the claim, upon which this suit is based,
against the estate of said Eva F. Craig.    The present action
is brought within three months after the rejection of the
claim.

In the trial of the cause witnesses testified that all knowl-
edge of the $1,800 was carefully concealed from plaintiff until
he was made aware of it by Carrie I. Barrows as just men-
tioned.

At the conclusion of plaintiff's case, defendant moved for
a nonsuit, which was denied, whereupon defendant rested
without introducing any evidence.    Thereafter plaintiff, in
open court, waived all right to recover against the defendant
a judgment exceeding $900 and interest on that sum; and
judgment was accordingly rendered in the sum of $1,040.35
and costs.

This appeal is from the judgment and from an order deny-
ing defendant's motion for a new trial.

Defendant asks for a reversal of the judgment upon three
grounds:  (1) That the complaint fails to state a cause of

action in this, that the cause of action alleged in the complaint is barred by the provisions of subdivision 4, section 338 of the Code of Civil Procedure; (2) Error of the court in permitting certain questions to be asked of the plaintiff during the trial; and (3) Insufficiency of the evidence to justify the findings of the court. Of these in their order.

This action was commenced twelve years after the transaction complained of; and defendant insists that the allegations of the complaint fail to bring it within the protection of subdivision 4 of section 338, Code of Civil Procedure. Said subdivision reads as follows: (The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows: Within three years:) "An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party, of the facts constituting the fraud or mistake."

The allegations of the complaint bearing on this point read as follows: (Paragraph X) "That all of said facts were concealed from plaintiff by said Eva F. Craig during her lifetime." (Folios 19 and 20:) That plaintiff "was wholly ignorant of the existence of said money, or that said money had ever been placed or deposited by said Margaret McMurray in said safe deposit box, or that she had said money, or any part thereof, at the time of her death, or that possession of said moneys or any part thereof had been obtained, or that said moneys had been appropriated by said Eva F. Craig after the death of said Margaret McMurray. . . . That the first time that plaintiff had any knowledge or means of knowledge of such facts, or any of them, was within three months prior to the commencement of this action."

As stated in the statute, an injured party is barred unless he brings his action within three years after becoming aware of the fraud, and in this connection it is a familiar rule of law that he is deemed to have knowledge of the fraud or mistake if he had the means of knowledge, or the circumstances were such as to put a prudent man on inquiry. (*Archer v. Freeman*, 124 Cal. 529, [57 Pac. 474].)

Pomeroy, in his work on Equity Jurisprudence, at section 917, after stating that the time within which to bring an action for fraud commences to run from the knowledge of

the fraud, or of facts and circumstances which would impart to him knowledge, says: "To this rule there is one limitation: It applies only when the fraud is known or ought to have been known. No lapse of time, no delay in bringing a suit, however long, will defeat the remedy, provided the injured party was, during all this interval, ignorant of the fraud. The duty to commence proceedings can arise only upon his discovery of the fraud; and the possible effect of his laches will begin to operate only from that time." The rule on the subject is also stated in a note to the same section.

It is very true, as contended by defendant, and as stated by Mr. Justice Shaw in the case of *People* v. *San Joaquin etc. Assn.*, 151 Cal. 797, [91 Pac. 740], that, "It is not enough that plaintiff merely aver that he was ignorant of the facts at the time of their occurrence and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them— as that they were done in secret or were kept concealed; and he must also show the time and circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged."

It is clear from the facts in the case at bar that the plaintiff was wholly ignorant of this deposit of $1,800, and that he was aware at no time, until informed by Mrs. Barrows, of any circumstance that would have put a prudent man upon inquiry; and having pleaded these facts with ample sufficiency he has, we think, brought his case within the exception to section 338, permitting an action for relief upon the ground of fraud commenced within three years after the discovery by the injured party of the facts constituting the fraud. Cases sustaining this position are: *Lataillade* v. *Orena*, 91 Cal. 565, [25 Am. St. Rep. 219, 27 Pac. 924]; *Tarke* v. *Bingham*, 123 Cal. 163, [55 Pac. 759]; *Matthews* v. *Sontheimer*, 39 Miss. 174; *Shiels* v. *Nathan*, 12 Cal. App. 604, [108 Pac. 34].

In the first of these cases the court held, in sustaining the complaint, that the plaintiff had no knowledge and no reason to suspect that fraud was being practiced on him; that therefore there was nothing to put him upon inquiry, and under

such circumstances, said the court, ''we do not see that it can be said that he failed to use due diligence to detect the fraud, or how he can be presumed to have known about it.''

*Tarke* v. *Bingham*, 123 Cal. 163, [55 Pac. 759], was an action brought to reform a mortgage in respect of a note incorrectly copied therein and made a part thereof. It was commenced more than three years after the execution of the mortgage. The defendant pleaded the statute of limitations. The evidence in the case was to the effect that the plaintiff did not discover the mistake until a few days before the action was begun. The court held that the cause was not barred, saying (in the course of its opinion) ''that it was not sufficient for a plaintiff in an action based upon fraud merely to plead or prove ignorance of the fraud at one time, and discovery or knowledge at another; that it was incumbent upon a pleader to show diligence and that he has not failed to avail himself of sources of information of which he had knowledge,'' and then proceeds: ''But the converse of the proposition is equally true. Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission. In this case, though means of information were open to the plaintiff, it does not appear that there was any duty devolving upon him to make use of them. Nothing had occurred to excite his suspicion, or to put him upon inquiry, and for these reasons, under the facts of this case, we think the finding of the court sufficient and sufficiently supported by the evidence.''

So in the recent case of *Shiels* v. *Nathan*, 12 Cal. App. 604, [108 Pac. 34], plaintiff and her husband, by reason of differences, had agreed to separate and live apart after dividing the community property. Appraisers were appointed to make a correct inventory of the property and to divide it equally between the spouses. A division was made. Contrary to his agreement the husband failed to notify the appraisers of the existence of certain community property,

which the wife did not discover until the lapse of considerably more than three years, at which time her husband had died and she had been appointed the representative of his estate. It was held that the action was not barred by the statute of limitations, and in so holding the court said: ''Accepting the settlement upon the belief that her husband had returned all the community property, she had a right to rest in that belief, and was not called upon to pursue an independent search for other property.''

In the case at bar the fraud was secret, the fund was concealed, and there was nothing about the transaction to excite the suspicion of the plaintiff, and we think the case falls squarely within the exception contained in the statute.

2. Plaintiff was called to the stand, and, over the objection and exception of defendant, answered two questions, each of which defendant claims was concerning matters of fact occurring before the death of Eva F. Craig, and therefore, as this is an action on a claim against the estate of a decedent, the evidence elicited was, so defendant argues, inadmissible under section 1880, subdivision 3, Code of Civil Procedure. In answer to these questions, plaintiff testified that it was not until after the death of Eva F. Craig that he learned that his wife had money placed in a safe deposit box, and that Eva F. Craig had misappropriated the same. Plaintiff's said answers related obviously to matters occurring after the death of the deceased, and hence the evidence thus adduced is not within the inhibition of the section mentioned. (*Cowdery* v. *McChesney,* 124 Cal. 363, [57 Pac. 221] ; *Corbus* v. *Leonhardt,* 114 Fed. 10, 13, [53 C. C. A. 636] ; *City Bank of Savings* v. *Enos,* 135 Cal. 167, [67 Pac. 52] ; *Roche* v. *Ware,* 71 Cal. 375, [60 Am. Rep. 539, 12 Pac. 284].)

3. Defendant finally contends that the evidence is insufficient to support the finding that Mrs. McMurray had any such sum of money as is claimed, and also that even if there was money left by Mrs. McMurray, it was her separate estate.

The evidence is clear and uncontradicted that Margaret McMurray saved the $1,800 from money given her by plaintiff for the up-keep and support of the home and family. We also think that the evidence is amply sufficient to support the finding of the court that the money in question was community property. That Mrs. McMurray took the deed to the

Berkeley lot in her own name, and that the property apparently was regarded in the probate proceedings as her separate estate, tends to prove that the lot was in fact her separate property; and if the plaintiff so regarded the lot, that circumstance would tend, in some degree, as argued by defendant's counsel, to prove that all money saved by Mrs. McMurray in the manner indicated became, by the acquiescence of the husband, her separate property. But the fact that in the probate proceedings the lot was treated as her separate property is a matter of slight significance, for as, by the agreement of the plaintiff and his daughters, the lot was to go to the latter's brother, it was doubtless a matter of indifference to the plaintiff whether it was regarded as the community property of himself and deceased wife or the latter's separate estate. In any event, having no knowledge, according to the evidence, of the existence of the $1,800, any action he took with regard to the lot could have very little influence upon the character of this fund, whether community property or the separate estate of his wife. The testimony of Carrie I. Barrows that the plaintiff and his wife regarded said savings as the wife's separate property, besides being a mere conclusion of the witness, manifestly referred only to those savings of which he had knowledge, i. e., those that went for the purchase of said lot.

There can be no doubt that money saved by Mrs. McMurray from the monthly household allowance was community property, unless there was an agreement or understanding between the spouses that it was to be her separate property, and the burden of proving such an understanding was on the defendant. (Davis v. Green, 122 Cal. 364, [55 Pac. 9]; Rowe v. Hibernia S. & L. Soc., 134 Cal. 403, [66 Pac. 569].) The trial court held in effect that the presumption that the $1,800 was community property of both spouses was not overcome by the evidence introduced, and we think the conclusion reached by the court is both just and correct. The following cases support this view: Moseley v. Heney, 66 Cal. 478, [6 Pac. 134]; Martin v. Southern Pacific Co., 130 Cal. 285, [62 Pac. 515]; Rowe v. Hibernia Sav. & Loan Society, 134 Cal. 403, [66 Pac. 569].

The judgment and order are affirmed.

Hall, J., and Lennon, P. J., concurred.