**PRENTISS v. McWHIRTER.***

No. 6903.

Circuit Court of Appeals, Ninth Circuit.

Feb. 28, 1933.

*Rehearing denied May 3, 1933.

James E. Kelby and Gordon Lawson, both of Los Angeles, Cal., for appellant.

Stanley W. Guthrie, Hugh W. Darling, and Guthrie & Darling, all of Los Angeles, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

By his amended complaint appellant sought to recover damages amounting to $197,000 for alleged fraud perpetrated upon him in connection with the sale of his stock in the Routt County Fuel Company to his brother, E. L. Prentiss, deceased. The administrator of the estate of the deceased

brother interposed a demurrer to the complaint, which was sustained by the trial court without leave to amend. Judgment for the defendant administrator followed. Plaintiff appeals from that judgment.

The action was commenced more than three years after the contract of sale was executed. The principal question involved is whether or not the cause of action is barred by the statute of limitations of the state of California, which provides that an action for fraud is barred three years after the cause of action accrues, and also provides that "the cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud. * * *" Code Civ. Proc. Cal. § 338, subd. 4.

Under the practice in the state of California, where the fraud is alleged to have been perpetrated more than three years before the commencement of the action, the plaintiff must plead facts to avoid the bar of the statute of limitations by alleging that the fraud was not discovered until a time within three years of the commencement of the action and the circumstances of the discovery. A demurrer to the complaint pleading the appropriate section of the statute of frauds (Code Civ. Proc. Cal. § 338, subd. 4, supra) raises the question as to whether or not the facts alleged in the complaint are sufficient to excuse failure of the plaintiff to discover the fraud before the three-year period preceding the commencement of the action. Sac. Sub. Fruit Ld. Co. v. Lindquist (C. C. A. 9) 39 F.(2d) 900, and California cases cited in the main opinion therein and in the concurring opinion, including Lady Washington Con. Co. v. Wood, 113 Cal. 482, 45 P. 809.

"Under the cases in this state [California] it is not enough to assert that the discovery was not sooner made. It must appear that it could not have been made by the exercise of reasonable diligence; and all that reasonable diligence would have disclosed plaintiff is presumed to have known, means of knowledge in such a case being the equivalent of the knowledge which it would have produced." Quoted from the opinion of the court in Montgomery v. Peterson, 27 Cal. App. 671, 675, 676, 151 P. 23, 24, citing Truett v. Onderdonk, 120 Cal. 581, 588, 53 P. 26; Lady Washington v. Wood, 113 Cal. 482, 486, 45 P. 809; Del Campo v. Camarillo, 154 Cal. 647, 98 P. 1049; Wood v. Carpenter, 101 U. S. 135, 140, 25 L. Ed. 807.

This particularity required in a pleading which seeks to avoid the bar of the statute of limitations by showing a discovery of the fraud at a date more recent than its perpetration is in accordance with the general rules at law and in equity. Wood v. Carpenter, 101 U. S. 135, 140, 141, 25 L. Ed. 807.

This rule has been lately stated by the Supreme Court of California (November 23, 1932) in California Reservoir & Power Co. v. Scarborough, 16 P.(2d) 268. We must measure the allegations of the complaint by this rule. The plaintiff alleged that he and his brother, the decedent, owned all the capital stock of the Routt County Fuel Company, a corporation; that plaintiff owned 40 per cent. thereof, or 24,000 shares, and the decedent owned 60 per cent., or 36,000 shares; that the decedent was general manager of the corporation operating its mining properties and had complete and exclusive control thereof and full knowledge concerning the same; that the plaintiff was entirely without knowledge of such matters and relied solely and exclusively upon his brother for information with relation thereto; that in November, 1925, the decedent represented to the plaintiff that he had withdrawn from the property of the corporation sums in excess of his proportion thereof, and had appropriated the same to his own use, and that he had hypothecated treasury bonds belonging to the company, as collateral security for personal loans made to him in "large amounts," and had lost the sums procured by said loans in stock speculations; that the mining properties owned by the corporation were threatened with immediate foreclosure and that plaintiff would thereby lose his entire ownership therein; that the decedent had a business partner who would purchase the plaintiff's stock, paying therefor $75,000, and no more, and that, if plaintiff would sell the stock holdings in the corporation to this partner, it would enable the decedent to refinance the loans made to him upon the said bonds of the company as collateral, and by restoring the credit of the company prevent foreclosures and enable the decedent to straighten out his financial affairs "and thus save himself from bankruptcy and disgrace"; that, if the plaintiff did not accept the proposed offer, he would lose his interest in the corporation by foreclosure; that the amount of the "overdraft" that the brother had "illegally drawn from funds belonging to the Routt County Fuel Company was $56,000 and no more"; that the plaintiff, relying upon these representations so made to him by his deceased broth-

er, sold his stock in the corporation to his brother for $75,000 and received from the decedent, in addition, his unsecured note in the sum of $25,000, "representing the proportion of the said $56,000 overdraft of E. L. Prentiss, to which plaintiff was entitled by reason of his 40 per cent. ownership of the stock of said Routt County Fuel Company." The gist of the complaint is that plaintiff, by reason of fraudulent misrepresentations made to him by his brother as to the financial condition of the corporation, sold his stock therein to his brother for the sum of $100,000 when that stock was worth the sum of $297,000. Plaintiff alleged that the foregoing statements made to him by his brother were untrue and particularly that it is not true that the properties of the corporation were in danger of being foreclosed, and that if the plaintiff did not accept the offer made to him he would lose his stock; that it is not true that the decedent had a partner or person who would purchase the plaintiff's interest for $75,000, or any sum; that, on the contrary, his brother acted entirely for himself in purchasing the plaintiff's stock in the corporation; it is not true that the overdraft amounted to $56,000, but it was in excess of $125,000.

The complaint does not specifically state the amounts which had been procured by the decedent by the hypothecation of the treasury bonds of the corporation other than the generalization "large amounts." According to the allegations of the complaint, the amount of funds abstracted from the company by the decedent was $69,000 more than decedent stated; that is, $125,000 instead of $56,000. According to this allegation, the representations made by the decedent to that extent at least overvalued instead of undervalued the remaining property of the company, and consequently, to that extent, overvalued rather than undervalued the stock owned by the plaintiff.

■ Whether or not the total amount obtained by the brother by hypothecating treasury bonds was greater or less than this difference of $69,000 is not alleged in the complaint, and, under the familiar rule that allegations of a pleading are to be construed most strongly against the pleader, it might be inferred that the amount was not in excess of the $69,000. We do not, however, base our decision upon this proposition, and it is mentioned only in order that it may be considered in connection with the allegations of the complaint in regard to discovery, which are as follows:

"That plaintiff has at all times since the month of November, 1925, and up to and until shortly after the death of his brother, been entirely without knowledge of the falsity of the representations so made to him by his said brother, E. L. Prentiss, and has at all said times been without knowledge or information in respect to the true state of affairs in regard to the financial condition of said Routt County Fuel Company or his said brother's financial condition, and also with respect to the real purchaser of plaintiff's stock.

"That, as hereinbefore stated, plaintiff at all times relied upon and believed in all of the statements and representations made to him by his said brother, E. L. Prentiss, of and concerning the matters and things set forth in paragraph VIII, and continued to so believe and rely upon the same up to and until on or about the month of January, 1931, at which time he was furnished with a copy of an audit of the books of said Routt County Fuel Company by the secretary thereof, and learned for the first time of the falsity of said statements and representations so made to him by his brother, E. L. Prentiss, as aforesaid, and learned for the first time the true facts with respect to said statements and representations."

■ It will be observed that the plaintiff does not state what facts were discovered by the "audit" of the books of the corporation. There is no allegation which purports to show any reason why the same facts could not have been discovered at any time by the plaintiff by the examination of the books of the corporation. "If the plaintiff made any particular discovery, it should be stated when it was made, what it was * .* * and why it was not made sooner." Quoted from Wood v. Carpenter, supra, citing Carr v. Hilton, Fed. Cas. No. 2,436, 1 Curt. 230. At the time of the transfer, plaintiff was entitled, as a stockholder of the corporation, to investigate the books of the corporation, and it is to be inferred from the allegations of the complaint that, if he had done so, he would have become aware of the misrepresentations made to him by his brother.

■ The appellant relies strongly upon the claim that there was a fiduciary relationship between the brothers. He cites the case of Brooks v. Martin, 2 Wall. (69 U. S.) 70, 71, 17 L. Ed. 732, as a parallel case, where it was held that, under the circumstances of that case, the managing agent or partner occupied a fiduciary relationship to the principal or other partners from whom he pur-

chased his share of the business. That case does not bear on the statute of limitations; at most it supports the cause of action alleged herein by plaintiff. We have assumed the sufficiency of the allegations of the complaint to state a cause of action for damages for fraud. The question we are considering is whether the defrauded party was put upon inquiry (see Tarke v. Bingham, 123 Cal. 163, 55 P. 759; Bank v. Baker, 82 Cal. 114, 22 P. 1037, 6 L. R. A. 833; Prouty v. Devlin, 118 Cal. 258, 50 P. 380; Beal v. Smith, 46 Cal. App. 271, 189 P. 341; McMurray v. Bodwell, 16 Cal. App. 574, 117 P. 627; Lataillade v. Orena, 91 Cal. 565, 27 P. 924, 25 Am. St. Rep. 219), and we see no escape from the proposition that from the very nature of the alleged fraud the plaintiff was thereupon placed on notice and charged with the duty to investigate the truth of the representations. The representations upon which plaintiff relies for recovery were such as to put him on notice, and, when he failed for more than three years to make any investigation, he must be held to be barred by the statute of limitations.

Judgment affirmed.