## THE CHANCELLOR OF NEW JERSEY

*v.*

## JOSEPH TOWELL et al.

[Argued December 1st, 1911.    Decided March 5th, 1912.]

1. Where a purchaser of a part of mortgaged premises assumes the payment of all of the mortgage on the whole of such premises, the land so purchased is liable for the mortgage debt before the portion of the mortgaged premises remaining unconveyed by the mortgagor or his estate can be sold in satisfaction of the mortgage debt.

2. In such cases the rule in equity that the aliened portions shall be sold in the inverse order of their alienation does not apply.

3. One of the cogent reasons for denying the application of this rule in such cases (beyond that of enforcement of the performance of the contract of assumption) is the anxiety of a court of equity to avoid the circuity of action which would necessarily result from the sale on foreclosure of the mortgage of the mortgagor's remaining lands, before those of the defaulting purchaser have been applied toward the satisfaction of the mortgage debt.

4. The fact that the defendant Towell became an alienee of the second and third tracts, conveyed to him expressly subject to the mortgage which he had previously covenanted to pay, must be regarded as decisive against him of the question of his equity which he has raised upon this appeal.

On appeal from a decree of the court of chancery. Bill of foreclosure in equity by the chancellor of New Jersey against Joseph Towell and others, and the executors of Absalom B. Woodruff, deceased, defendants. From a part of the decree for complainant defendants appeal.

*Mr. William L. Lewis,* for the appellants.

*Mr. George S. Hilton,* for the respondent.

The opinion of the court was delivered by

VREDENBURGH, J.

This controversy concerns the order of sale of parcels of mortgaged premises under foreclosure, and involves the correctness

of the decree below in directing certain of the parcels which remain unconveyed by the mortgagor and his executors, to be sold *before* resort be had to certain previously-conveyed parcels called in the decree the "Second and Third Tracts."

In December, 1870, Absalom B. Woodruff, being seized of a tract of land in Paterson, New Jersey, became indebted to the chancellor of New Jersey in the sum of $13,000, and gave his bond for double that sum in the usual form to the Chancellor, conditioned to be void if he, Woodruff, should pay that sum, with interest, upon the happening of the deaths of two-named persons (then living, but who have since died), and to secure such payment executed at the same time a deed of mortgage, covering his said land, containing the same conditions as the bond.

Woodruff died October 11th, 1886, but before that event conveyed by deed of warranty two separate parcels of the land embraced in the mortgage, on the dates following: *First,* on July 5th, 1882, a parcel described in the master's report as the "First Tract," containing four acres, to the defendant Joseph Towell; *second,* on March 5th, 1885, another parcel—in lots numbered on a map as lots 142, 144 (part of lot 146), 171, 173 and part of lot No. 175—described in the master's report as the "Second Tract," to the said Joseph Towell.

After Woodruff's death his executors, by an executors' deed, drawn in the usual form and without covenants of warranty, *thirdly,* conveyed on February 16th, 1887, another parcel of said mortgaged land, described in the master's report as the *third tract,* being composed of lots Nos. 140 and 169, in block A, as laid down on a map, to the said Joseph Towell. There was then left unconveyed in the estate of Woodruff lots 139, 141, 143, 145, 149, 151 and part of 153, on the west side of Lilly street, as indicated on said map.

The appellants urge that the above-designated *second* and *third* tracts should have been decreed to be sold next after the sale of the said *first tract* to pay any deficiency (there being no dispute as to its priority of liability) of the proceeds of sale necessary to satisfy the mortgage debt remaining after the sale of said first tract, and *before* resort be had to the said unconveyed lots still owned by the appellants. The decree complained of, on the con-

trary, orders these unconveyed lots to be sold before the said second and third tracts are exposed to sale, and hence the dispute which is the subject of the present appeal.

In the sale from Woodruff to Joseph Towell, dated July 5th, 1882, the latter, in consideration of that conveyance to him, entered into an absolute agreement and covenant therein set forth (next to the description of the parcels conveyed by it), as follows, viz.:

"And which is hereby sold subject to a mortgage executed by said Woodruff to the chancellor of New Jersey, to secure the payment of $13,000 to the said chancellor, with interest, as in said mortgage stated, which mortgage was dated December 16th, 1870, or about that time, and the payment of which said sum of $13,000, with interest, as in said mortgage stated, the said Joseph Towell *hereby assumes and* covenants for himself, his heirs, executors and administrators, to and with the said Absalom Woodruff, his executors, administrators and assigns, *to pay off and discharge* according to the terms and conditions in said mortgage mentioned including the buildings, plants, trees and flowers thereon."

On the same date (July 5th, 1882), said Towell, with his wife, executed an indemnifying mortgage to said Woodruff, covering the same land and premises conveyed to Towell by the last-mentioned deed, stating in said mortgage

"that the premises thereby mortgaged were the same conveyed by said Woodruff to said Towell by said deed subject to said $13,000 and the payment of which said sum of $13,000 secured by said mortgage of $13,000, with interest, was by said Towell assumed; provided always, and said mortgage from said Towell to said Woodruff was therein declared to be, upon the express condition, that if the said Towell, his executors or administrators, did and should well and truly pay or cause to be paid to the chancellor the sum of money and interest secured by said $13,000 mortgage to said chancellor *and indemnify and save harmless* the said Woodruff from any payment thereon, according to the condition of a certain bond bearing even date with said mortgage to said Woodruff, executed by said Towell to said Woodruff, then said bond and mortgage of said Towell should be void."

The explicit terms of this mortgage from Towell to Woodruff make assurance doubly sure that the intent of the respective parties executing and accepting these sealed instruments was, that Towell assumed thereby, as a part consideration for the land con-

veyed to him, to pay and discharge *all* of Woodruff's said mortgage debt to the Chancellor, and indemnify Woodruff against its payment.

Incontestably, the consequence, in equity, of such an assumption was, that Towell became thereafter, as between himself and his vendor, the principal debtor, and the liability of the vendor, Woodruff, in respect to the mortgage debt, was that of surety. This relationship established by the covenant of Towell in the deed was reinforced by the terms of his bond and mortgage just quoted.

By the acceptance of this title the clause of assumption by Towell in the deed to him became his covenant, and he thereby became bound in law to his grantor to pay the mortgage (*Finley v. Simpson, 22 N. J. Law (2 Zab.) 311*), and liable to him for any *deficiency* which might exist upon a sale of the mortgaged premises.

In *Weatherby v. Slack, 16 N. J. Eq. (1 C. E. Gr.) 493*, Chancellor Green said: "The real question in such cases must always be, *Who, in equity, is bound to pay the debt?* The debt is due from the mortgagor to the encumbrancers, and his (the mortgagor) portion of the mortgaged premises must primarily bear the burden, *unless it be shown that it has, by some means, been shifted upon the portion of the alienees.*"

As soon as the debt in question became payable, Woodruff, the surety, had the right to file a bill to compel payment by Towell, the principal debtor, in order that he, the surety, might be relieved from responsibility; and the court will interfere "to compel payment by the principal rather than the surety, in order to enforce the performance of the obvious duty of the principal to protect the surety from a needless burden, *and to prevent circuity of action*." *Irick v. Black, 17 N. J. Eq. (2 C. E. Gr.) 189, 197.* "The court will interfere though the principal is perfectly able to respond in damages, and there is no danger of eventual loss." *Ibid. 197.*

In *Shannon v. Marselis, 1 N. J. Eq. (Saxt.),* at *p. 424*, Chancellor Vroom said: "It is the policy and *duty* of this court to settle and adjust all claims between the parties in *one* suit, if possible. * * * There can be no good reason assigned why

there should be this circuity of action, but a very good one why there should not; which is, that the money might be lost (to Carrick) altogether."

The rule in equity that where mortgaged premises are sold in separate parcels successively to different purchasers with covenants against encumbrances, the parcels are liable to sale to satisfy the mortgage, in the inverse order of their sale, *"will not be applied in any case where its application would work injustice."* *Hill's Administrator* v. *McCarter,* 27 *N. J. Eq.* (*12 C. E. Gr.*) 41; *Hoy* v. *Bramhall,* 19 *N. J. Eq.* (*4 C. E. Gr.*) 563; *Hanes* v. *Denby,* 28 *Atl. Rep.* 798.

Professor Pomeroy, in his *"Equity Jurisprudence"* (at *p. 215* ¶ *1224 vol. 3*), states the general rule in equity in this form:

"Whenever the mortgagor has conveyed separate parcels of the mortgaged premises by warranty deeds to successive grantees and there was *no special provisions in any of their deeds,* and no other dealings between themselves *or with the mortgagor, which disturb the equities otherwise existing,* a priority results depending upon the order of conveyance."

But, in his next paragraph (1225), he proceeds to consider the dealings between the grantee and the mortgagor which "disturb" those equities, and *defeat* the rule, and says:

"The doctrine stated in the foregoing paragraph is one of purely equitable origin, and is not an absolute rule of law, and if the peculiar equitable reasons on which it rests are wanting, it ceases to operate. \* \* \* The equities among successive grantees as determined by the general doctrine of the preceding paragraph will therefore be *disturbed* in the following instances: (1) Whenever a grantee of any parcel either expressly *assumes the payment of the mortgage,* or his deed is of such a form that he takes the parcel conveyed to himself *subject* to the mortgage as a part of the consideration, *then,* as has already been shown, the parcel thus purchased becomes, in the hands of himself and of those holding under him *primarily* chargeable with the mortgage debt as *against* the *mortgagor grantor,* and consequently as against all subsequent grantees of other parcels from the mortgagor. By such an *express* or implied assumption, the doctrine of liability in the inverse order of alienation, and all its consequences are *defeated* with respect to the mortgagor and the subsequent grantees. (2) In like manner when the deeds to the successive grantees are not warranty or equivalent thereto, but simply purport to convey the mortgagor's right, title and interest in the parcels, the intention is clear, that the grantees respectively assume their portions of the burdens. Their several parcels are all liable ratably and not in the inverse order."

The record brought up on this appeal shows that in the said deed of March 5th, 1885, from Woodruff to Towell, conveying the *second tract*, there is a clause reading:

"Subject, however, to a mortgage of $13,000 to the chancellor by said Woodruff, on or about December 19th, 1870, which said Towell has heretofore assumed and agreed to pay, and that the said Woodruff will warrant, secure and forever defend the said land and premises unto the said Joseph Towell (except the said mortgage) and his heirs and assigns forever,"

and that in the said deed of February 16th, 1887, from the executors of Woodruff to Towell, conveying the *third tract*, there is a clause reciting the terms of a lease given by Woodruff to Towell, and reading in the deed as follows:

"Free from all encumbrance *except* a mortgage of $13,000 given by said Woodruff to the chancellor of New Jersey and which said mortgage said Towell has already assumed and agreed to pay."

But quite irrespective of the form of these admissions of Towell, in these deeds to him, of his assumption of the mortgage, his obligation to pay the $13,000 mortgage debt already existed and could not thereby be enlarged, and when these second and third tracts were conveyed to him, subject to the mortgage, the rule as to sale in the inverse order of alienation ceased, as we have seen by the authorities, to be applicable. The fact that Towell himself became an alienee of the second and third tracts conveyed to him expressly subject to the mortgage which he had covenanted to pay, is decisive against him upon this question. The holders of the subsequent mortgages from Towell ($5,000 to the Chancellor, dated August 29th, 1896, and $2,000 to Zabriskie, dated January 31st, 1900) can stand certainly in no better position than Towell; when they took their mortgages the public records then showed them that the lands included in their mortgages were subject to the $13,000 mortgage. and they thus had full notice that those lands must bear the same equitable proportion of the mortgage burden upon the whole tract which Towell was bound to bear.

The decision in the case of *Thompson* v. *Bird, 57 N. J. Eq. (12 Dick.) 175*, is pointed authority in this state in support of the

position that the rule as to sale in the inverse order of alienation is inapplicable to cases like the present. It was there *held*, as to the mortgagor's lands remaining in him after his conveyance of a part, that "where a purchaser of a part of the mortgaged premises assumes the payment of *all*, or a portion of the mortgage on the *whole* of such premises, the land so purchased is liable for the mortgage debt, or such portion of it assumed by the purchaser, *before* the remaining portion of the mortgaged premises held by the mortgagor can be sold in satisfaction of the mortgage debt."

Justice Reed, sitting as Vice-Chancellor in that case, thus defines (at *p. 177*) the true rule, and its reason, in characteristically clear language, as follows: "But if any purchaser of a part of mortgaged premises instead of bargaining for a clear title, chooses to assume the payment of *all* or a part of an encumbrance upon the whole of such premises, such purchaser cannot equitably ask that the *remaining portion* shall be *first* sold to answer the mortgage debt, for it is apparent that after such person gets the land from a mortgagor at a less price on account of the encumbrances, the payment of which he assumes, he cannot ask that the *land of the mortgagor* shall be sold *to relieve his own land* of the debt which he has promised to pay as a part of the consideration for his purchase."

The decree there was that the mortgagor's remaining land should be sold *last*. The cases cited on page 178 of the opinion fully sustain its conclusions; among them are the very early decisions in this state of *Engle* v. *Haines, 5 N. J. Eq. (1 Halst.) 186; Wikoff* v. *Davis, 4 N. J. Eq. (3 Gr. Ch.) 224,* and others which have been followed to the present time as leading authorities upon the subject.

Both reason and authority lead us therefore to hold that the defendant Towell, having agreed, as part consideration for the purchase of the first tract, to relieve Woodruff from liability to pay either the whole or any part of the mortgage debt himself, Woodruff's estate is entitled to compel him to perform that contract. It is plain that if it should in the future be necessary to sell that part of the mortgaged premises still remaining in the Woodruff estate for the purpose of satisfying any part of the mortgage debt, that that estate would be entitled to call upon

Towell to make good the loss which would have fallen upon it by reason of his breach of his contract of assumption. Towell has therefore no right to have any part of the Woodruff lands sold to satisfy the $13,000 mortgage, and, consequently, all the property which he holds by conveyance from Woodruff, or from Woodruff's estate, which is subject to the mortgage, should be first exhausted for the purpose of satisfying the mortgage debt.

This course would avoid circuity of action, and this, the court, for obvious reasons, regards as a duty which it is always anxious to accomplish.

The decree below should be reversed to the extent required to conform to these views.

GARRISON, J. (concurring).

My vote to reverse is based solely upon the equitable rule stated by Professor Pomeroy in the concluding paragraph of section 1225 of his work on *Equity Jurisprudence* and quoted at length by Judge Vredenburgh in his opinion.

The deeds on record at the time the second mortgage was taken gave notice by their terms of the equities subsisting between the mortgagor and his grantee by which the direct and not the reverse order of alienation obtained. This was notice that the second mortgagee would have no right to marshal securities as against the land not included in his mortgage. The decree giving such right to the second mortgagee, who was also the holder of the first mortgage, was therefor erroneous.

WHITE, J. (concurring).

The equitable doctrine of "inverse order of alienation," as applied to the order of sale of several parcels of a tract of land covered by a foreclosing encumbrance, is, as I view it, dependent upon the payment of the consideration for the parcels conveyed, and arises because it would be inequitable for the mortgagor-grantor, who had already received the full consideration for the parcel conveyed, to call upon such parcel to contribute towards the payment of his mortgage debt until his remaining mortgaged land had been first exhausted. Of course, there may be other reasons than non-payment of consideration for the express as-

sumption by the conveyed parcel of a part or all of the mortgage debt, but, in the absence of such express assumption, the payment or non-payment of the consideration furnishes, in my judgment, the real underlying and substantial basis for the application or non-application of this equity rather than the presence or absence of a covenant warranting title. Of course, a warranty of title against the mortgage will give rise to the application of the equity, but obviously there would be no warranty of title if a part of the consideration was to be the payment by the conveyed parcels of the mortgage debt, and, on the other hand, the mere absence of an express warranty of title against the mortgage encumbrance, if there had in fact been a payment of the full consideration for the conveyed parcel, would not defeat the real reason for the equity, and, consequently, as it seems to me, would not defeat the application of the equitable doctrine under consideration. In other words, if the grantee of the conveyed parcel expressly assumes the payment of the mortgage debt, such assumption obviously enters into the consideration for the conveying and defeats the application of the rule or equity of inverse order of alienation. So, if it appears in any other way that the consideration in whole or in part was not paid because of the parcel being conveyed subject to the lien of the mortgage debt, the rule is also defeated to the extent of such non-payment of consideration. But if it appears that the full consideration for the conveyed parcel was actually paid to the mortgagor-grantor, the grantee is entitled to call upon the remaining mortgaged land owned by the mortgagor-grantor to pay the mortgage debt before the conveyed parcel shall be attacked, and this quite irrespective of the non-existence of any express covenant of warranty of title.

This is my understanding of the doctrine laid down by Pomeroy (paragraphs 1224 and 1225) and by Mr. Justice Reed in *Thompson* v. *Bird, 57 N. J. Eq. (12 Dick.) 175.*

Assuming that the language of these conveyances sufficiently establishes the payment of the full consideration, this view would lead, it seems to me, to an affirmance of the vice-chancellor's decision if there were no express assumption of the mortgage debt in the conveyances of tracts "second" and "third" in this case, because I cannot see how the doctrine of "avoidance of circuity

of action" could have the effect against the second mortgagee of interposing before his lien the personal obligation of Towell upon the collateral bond which the latter gave when he purchased tract "first." As was said by Mr. Justice Garrison in *Brewing Company* v. *Clement, 71 N. J. Eq. (1 Buch.) 224, 229 :* "Avoidance of circuity of action is at best a doctrine of convenience—a secondary equity, so to speak—and not to be resorted to in the face of either legal rule or substantial right."

If, therefore, the case were bare of other circumstance than the fact that Towell is the same person who assumed the payment of the mortgage debt as part of the consideration for the "first tract" conveyed to him and gave a personal collateral bond conditioned upon his paying such debt, I should think the payment by him to the mortgagor-grantor of the full consideration for the "second" and "third" tracts would entitle his second mortgagee to require the sale of the mortgagor-grantor's remaining land before said tracts were called upon.

There was, however, another important circumstance connected with the conveyances of these two tracts. They were not only conveyed subject to the lien of the mortgage, but it was expressly stated in the conveyances that this was done purposely because the grantee, Towell, had already assumed the payment of the mortgage debt. This statement, it seems to me, in view of the fact that the mortgage was a lien upon the tracts, constituted an express extension of the previous assumption upon the "first" tract to the "second" and "third" tracts. It was in effect an assertion by the mortgagor-grantor, "I will not remove the lien of the mortgage debt from these two tracts as my acceptance of the full consideration would otherwise oblige me to do because the burden is upon you to do so as a result of our previous transactions," and it was an agreement by the grantee that the mortgagor-grantor should not be called upon to so remove it, but, on the contrary, he, the grantee, should be subject to the burden of either doing so or holding these two tracts also in addition to the "first" tract subject to the burden of the whole mortgage debt.

This being so, of course the second mortgagee took with full notice and can no more invoke an equity expressly bargained away than his mortgagor, who bargained it away, could invoke it.

I concur in the reversal, therefore, but for the reasons above stated.

*For affirmance*—None.

