[Civ. No. 711. Fourth Appellate District.—April 16, 1931.]

FRANK C. EPPERSON et al., Plaintiffs, v. JOE CAP-PELLINO et al., Defendants and Respondents; J. C. RILEY, Appellant.

I. Henry Harris for Appellant.

Dana R. Weller for Respondents.

MARKS, J.—This is an appeal from a judgment foreclosing a mortgage in the principal sum of $7,250 executed by the respondents Joe Cappellino and Anna Cappellino, his wife, to the plaintiffs. Appellant purchased a portion of the mortgaged premises from Cappellino and wife after the execution and recordation of the mortgage. The court ordered all of the mortgaged property sold to satisfy the indebtedness.

It is the contention of appellant that the decree of foreclosure should have ordered the Cappellino property sold first, and if its sale did not yield enough to satisfy plaintiffs' demand that appellant's property should then be sold under the doctrine of the inverse order of alienation as recognized by section 2899 of the Civil Code.

As the facts in the case are somewhat involved it will be necessary to detail them in order to get a clear view of the reasons for the judgment of the lower court in refusing to apply the doctrine of the inverse order of alienation in its decree of foreclosure. The plaintiffs have not appeared in this appeal so we will hereafter refer to the defendants, Joe Cappellino and Anna Cappellino, as the respondents, and to the defendant, J. C. Riley, as the appellant.

The evidence discloses that respondents were the owners of the mortgaged premises situated in Los Angeles County. Subsequently to the execution and recordation of the mortgage they agreed to sell a portion of the mortgaged premises to L. M. Moore who made a payment on the purchase price in the sum of $1500 and partially constructed a house on it which in its uncompleted condition was of the reasonable value of $3,000. Moore defaulted in his payments and permitted various liens to be filed for labor and materials used in the construction work.

On April 8, 1926, respondents and Hersie Mau entered into an agreement for the purchase by Mau, for the sum of $18,500, of the property formerly sold to Moore. As part of the consideration for the sale, Mau agreed to secure the release of all mechanics' liens upon the property, the dismissal of litigation pending between Moore and respondents and to secure a release from Moore of all claims against respondents, and his quitclaim deed to respondents of the property in question. Mau agreed to pay the purchase price of $18,500 as follows: The sum of $3,000 in cash obtained by a mortgage on the property being purchased, executed by respondents to P. M. Reidy, which mortgage Mau agreed to assume and pay; by a credit of $1500 paid by Moore on account of his prior purchase of the premises; a further credit of $3,000, the value of the partially completed house erected by Moore; the sum of $3,750 in cash to be paid in installments as provided in the contract; and by the payment of the Epperson mortgage in the sum of $7,250 which Mau agreed to assume and pay. The effect of this agreement of purchase was that Mau was to receive a credit on the purchase price of the property and thereby respondents were to pay to her the full amount of their indebtedness to the plaintiffs. From this fact, together with the fact that Mau agreed to assume and pay the mortgage to the plaintiffs, she would become the principal debtor and the property being purchased by her would become primarily liable for the payment of this indebtedness. (*Robson* v. *O'Toole*, 45 Cal. App. 63 [187 Pac. 110]; *Robson* v. *O'Toole*, 60 Cal. App. 710 [214 Pac. 278]; *Graham* v. *Durnbaugh*, 44 Cal. App. 482 [186 Pac. 798]; *Williams* v. *Coleman*, 70 Cal. App. 400 [233 Pac. 397].)

Some little time after the execution of the contract between respondents and Mau, and by a written agreement of the parties concerned, P. M. Reidy was substituted in the place of Mau as the purchaser of the property. He agreed to carry out the details of the purchase and to be bound by Mau's agreement, with the exception that instead of deferring the payment of $3,750 of the purchase price, he agreed to pay $2,500 in cash. This was the only modification or change in the Mau agreement.

All of the agreements were placed in escrow with Merchants National Bank of Los Angeles which became the

escrow-holder for the interested parties. The escrow-holder proceeded to secure a report on the condition of the title of the property from the California Title Insurance Company and after the receipt of a report from the title company Reidy proceeded to secure the necessary releases and other instruments in order to clear the title to the property from the claims of Moore and the lienholders and deposited in escrow the money to be paid respondents. A deed to the premises was deposited in escrow by respondents as grantors to Reidy as grantee. About this time the title company reported that there were two unpaid judgments of record against Reidy. On the following day by the written consent of Reidy and respondents, appellant was substituted in the transaction in the place and stead of Reidy as the purchaser of the premises. The deed from respondents to Reidy was marked to be returned and was never delivered. On July 26, 1926, appellant gave written instructions to the Merchants National Bank of Los Angeles, the escrow-holder, whereby he agreed to purchase the property and to "take title as it appears under the instructions of P. M. Reidy to you, dated July 2d, 1926, with which instructions I am familiar". These instructions of July 2d, thus referred to, together with the instructions of appellant, show that he agreed to purchase the property upon the same conditions as those contained in the Mau agreement with the exception already noted. The sale to appellant was completed under these instructions and agreements and he went into possession of the premises. Interest upon the indebtedness to the plaintiffs was paid up to September 28, 1926, but no part of the principal was paid. After default in several installments of interest the plaintiffs declared the full amount of the principal and interest due under the provisions of their note and mortgage and instituted the foreclosure proceedings.

Under this state of facts appellant strenuously maintains that his property should not be sold until the sale of respondents' property and then only for any deficiency remaining upon the judgment after the selling price of respondents' property had been credited thereon. He relies upon the provisions of section 2899 of the Civil Code but omits from his argument the consideration of a controlling clause in this section which provides that resort may be

had to property in the inverse order of alienation only when this can be done without risk of loss to the creditor *"or injustice to other persons"*. He maintains that because the deed from respondents to him did not contain a proviso that he assumed and agreed to pay the plaintiffs' mortgage, his property cannot be held as primary security for this mortgage and that respondents cannot vary the terms of their deed by showing that appellant, as well as Mau and Reidy, assumed and agreed to pay this mortgage and were given credit for its principal sum on the purchase of the property.

The terms of the sale of the property to appellant were all set forth in writing in the various documents deposited in escrow with the Merchants National Bank of Los Angeles to which escrow appellant was a party and under the terms of which he secured title to his property.

It has been repeatedly held that the true consideration paid for property may be proved where it does not appear in the deed of conveyance. In the case of *Dodds* v. *Spring*, 174 Cal. 412 [163 Pac. 351, 353], it was said: "The promise by the mortgagor's grantee personally to be answerable for the payment of the mortgage may appear and bind such grantee because of a clause in the deed or by a separate written instrument which need not be executed with the formalities necessary to a deed and which, if preceding the execution of the deed of conveyance, is not so merged in the deed that the omission of the assumption clause from the latter instrument will release the vendee from his prior covenant. Indeed, the agreement may rest wholly in parol, and in such case is not within the statute of frauds."

The cases of *White* v. *Schader*, 185 Cal. 606 [21 A. L. R. 499, 198 Pac. 19], *Andrews* v. *Robertson*, 177 Cal. 434 [170 Pac. 1129], and *Arp* v. *Ferguson*, 175 Cal. 646 [166 Pac. 803], support this doctrine. Under these decisions the trial court was amply justified in considering the various instruments placed in escrow in determining the true consideration paid by appellant for the property and was fully justified in concluding that appellant assumed and agreed to pay the plaintiffs' mortgage as he received from respondents virtual payment of the entire principal sum of this

indebtedness by having it credited upon the purchase price of the property.

■ The doctrine of the inverse order of alienation is not such a hard-and-fast rule that it cannot be varied by the circumstances of a case. It was intended to promote fair and equitable dealings between parties and not to encourage injustice or oppression. It should not be invoked where its application would work an "injustice to other persons". ■ Its application in the instant case would require respondents to pay the plaintiff's mortgage to the extent of the value of their property after they had reduced the purchase price to appellant of his property by the full amount of the principal sum of the mortgage. A doctrine which has as its purpose the promotion of equity and fair dealing cannot be permitted to work such an oppressive and unjust result.

The cases of *Weyant* v. *Murphy*, 78 Cal. 278 [12 Am. St. Rep. 50, 20 Pac. 568], and *Irvine* v. *Perry*, 119 Cal. 352 [51 Pac. 544, 546], are directly in point. In these cases the Supreme Court refused to apply the doctrine of the inverse order of alienation where the one attempting to invoke it had assumed and agreed to pay the indebtedness or create a fund for its payment. In the Perry case it was held as follows:

"It is true that the doctrine of selling mortgaged property which has been alienated by the mortgagor in the inverse order of alienation is not so unyielding but that it may be controlled by circumstances.

"A familiar example of this is to be found in cases where in a sale of a part of the premises the grantee has bound himself to pay the mortgage. In such a case, the parcel thus purchased becomes in his hands, and those holding under him with notice, primarily chargeable with the mortgage debt, as against the mortgagor and grantor and as against subsequent purchasers of other parcels of the mortgaged premises."

In the case of *Hopkins* v. *Warner*, 109 Cal. 133 [41 Pac. 868, 869], it was said: "It is not necessary that there should be a formal promise, on the part of the grantee, to pay the mortgage debt, in order to render him liable therefor, if his intention to assume the debt appears from a consideration of the entire instrument. The obligation may be

made orally or in a separate instrument; it may be implied from the transaction of the parties, or it may be shown by the circumstances under which the purchase was made, as well as by the language used in the agreement.''

The cases of *McCarthy* v. *Kurkjran,* 65 Cal. App. 569 [224 Pac. 1016], *Andrews* v. *Robertson, supra,* and *Cunningham* v. *Robinson,* 196 Cal. 672 [239 Pac. 313], give further support to this rule.

█ Respondents are not here complaining of the judgment of the court below which required the sale of all of the mortgaged property to satisfy the plaintiffs' demand. Appellant cannot complain of it because it is more favorable to him than the facts of the case would warrant, as the trial court might well have directed his property to be sold first with a resort to respondents' property to pay any deficiency remaining after the sale of appellant's land.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.