In the Matter of **BEACON DISTRIBUTORS, INC.,** Bankrupt.

No. 7797.

United States Court of Appeals, First Circuit.

Heard April 6, 1971.

Decided April 27, 1971.

Allan M. Shine, Providence, R. I., with whom Winograd, Shine & Zacks, Providence, R. I., was on brief, for Herbert Katz, Trustee-in-Bankruptcy of Beacon Distributors, Inc., appellant.

Harold H. Winsten, Providence, R. I., with whom Feiner & Winsten, Providence, R. I., was on brief for James Lipet Enterprises, Inc., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In March 1965 James Lipet Enterprises, Inc., gave a blanket mortgage on two parcels of Rhode Island real estate to the Pawtucket Institution for Savings to secure a promissory note for $92,000. One of these parcels was located in the City of Pawtucket and the other in

Providence. About two years later Lipet conveyed the Pawtucket property to a Massachusetts business trust upon the condition that the grantee assume and agree to pay the entire mortgage obligation. Subsequently, the trust conveyed the Pawtucket property to Beacon Distributors, Inc., the present bankrupt, upon the same condition, namely, that Beacon assume the entire mortgage obligation, which it did. The balance due on the note secured by the blanket mortgage is presently some $76,800, plus interest, which is now in default. The Providence real estate is valued at approximately $60,000. The Pawtucket property is worth between $65,000 and $95,000.

In this proceeding the bank sought the advice and direction of the referee in bankruptcy with reference to the exercise of the power of sale in the mortgage and the order in which it should foreclose the two parcels covered therein. Beacon's trustee contended that, if the bank foreclosed on the Pawtucket property first, the sale would leave no equity for the bankrupt's unsecured creditors and urged that the bank be required to marshal the assets and proceed first against the Providence real estate. Lipet, which still owns the Providence real estate, objected. The referee found that the Providence real estate did not represent a fund in the hands of the bankrupt and that the doctrine of marshaling was not enforceable against the bank. The district court upheld the referee and this appeal followed.

■■■ The doctrine of marshaling covers two principles, which are more accurately entitled the "two funds" doctrine and the "inverse order of alienation" rule. *Compare* IV American Law of Property § 16.154, at 359 (Casner ed. 1952), *with* Storke & Sears, Transfer of Mortgaged Property, 38 Corn.L.Q. 185, 202 (1953). The "two funds" doctrine is applied when two or more credi-

tors claim against one debtor and the first creditor can reach two properties held by the debtor whereas the second can reach only one. Meyer v. United States, 375 U.S. 233, 236, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963); First National Bank of Boston v. Proctor, 40 F.2d 841 (1st Cir.), cert. denied, 282 U.S. 863, 51 S.Ct. 36, 75 L.Ed. 764 (1930). In such a case, equity will require the first creditor to look first to the property which cannot be reached by the second creditor, but only if it can be done without prejudice to the first creditor or to third parties. Victor Gruen Associates, Inc. v. Glass, 338 F.2d 826 (9th Cir. 1964). Both the district court and the referee held that marshaling can be required only when the first creditor has available two properties *of the same debtor,* which is not the situation here. The trustee insists that the doctrine may be applied without this requirement being met.* Both history and reason refute this contention. Derived from the case of Culpepper v. Aston, 2 Ch.Cas. 115, 117 (1682), the doctrine is almost the same today as it was then. *Compare* Lanoy v. Duke of Athol, 2 Atk. 444, 446 (Ch.1742), *with* Meyer v. United States, *supra.* An early case on all fours with the instant one is Ex parte Kendall, 17 Ves. 514 (Ch.1811). In that case a firm's senior partner died, and shortly thereafter the firm collapsed. The question before the Lord Chancellor was whether he should stay the creditors' dividend on the four surviving partners "until payment shall have been recovered out of [the decedent's] estate by those creditors, who are creditors upon both funds." *Id.* at 518. The Chancellor ruled that the doctrine did not apply. American courts have followed this ruling consistently, from the earliest days, *e. g.,* Ayres v. Husted, 15 Conn. 504, 516 (1843); Dorr v. Shaw, 4 Johns.Ch. 17, 20 (N.Y.1819), to the latest, In re Independent Truckers, Inc., 226 F.Supp. 440

---

* Curiously, it has usually been argued that use of the "two funds" doctrine should be limited because it is prejudicial to unsecured creditors. *Compare* Langdell, A Brief Survey of Equity Jurisdiction 15–16 (1905), *and* Langel v. Moore, 119 Ohio St. 299, 164 N.E. 118 (1928), *with* 43 Harv.L.Rev. 501 (1930).

(D.Neb.1963); Homan v. Michles, 118 Ohio App. 289, 194 N.E.2d 162 (1963). Even as an original proposition, there can be no equity in making Lipet pay to increase Beacon's estate, because Beacon agreed to relieve Lipet of responsibility for the mortgage. Since Beacon cannot establish that it would be just and equitable that Lipet pay in the first instance, it has no equity to compel the bank to go against Lipet first. *Kendall, supra* at 520–21.

Finally, it is well settled that the rule of "inverse order of alienation" does not apply in this sort of case, where Beacon had assumed the mortgage. *E. g.*, Epperson v. Cappellino, 113 Cal.App. 473, 298 P. 533 (1931); Chancellor of New Jersey v. Towell, 80 N.J.Eq. 223, 82 A. 861 (1912); Storke & Sears, Transfer of Mortgaged Property, 38 Corn.L.Q. 185, 205 (1953).

Affirmed.