[Civ. No. 932.   Third Appellate District.—April 6, 1912.]

A. J. RAISCH, Respondent, v. CHARLES A. WARREN, JR., Administrator of Estate of CHARLES A. WARREN, Deceased, WILLIAM T. WARREN, CHARLES A. WARREN, JR., WILLIAM T. WARREN, as Guardian of the Person and Estate of HENRY O. WARREN, a Minor, BERTHA WARREN, CLAUDINE WARREN, CHARLES A. WARREN COMPANY, a Corporation, and A. E. BUCKMAN, Defendants; CHARLES A. WARREN, JR., Appellant.

ACTION FOR PARTNERSHIP ACCOUNTING—CORPORATIONS USED AS INSTRUMENTALITIES—GIFT OF STOCK BY DECEASED PARTNER TO HEIRS—EQUITY JURISDICTION AND RELIEF.—A complaint in an action for an accounting and settlement of a partnership between plaintiff and one of the defendants and a deceased partner, which shows that the corporation defendant and another corporation named were used as instrumentalities of the partnership in carrying on construction work for the United States, and that the deceased partner is largely indebted to the partnership, but had caused his shares of stock in such corporation to be transferred to his heirs as a gift *causa mortis*, states a ground for relief in equity as against such administrator and heirs, and they may be restrained from disposing of such stock pending the settlement of the partnership accounts.

ID.—VENUE OF EQUITY ACTION—PRESUMED PROCEDURE UPON JUDGMENT. Such action in equity for an accounting of the partnership may be brought and tried in the superior court of a county other than that in which the estate is being administered. But if, upon the trial, anything is found due from the estate, it is to be presumed, if no ground in equity appears for a different procedure, that the court would be guided by section 1504 of the Code of Civil Procedure, in formulating its judgment, whereupon a certified transcript of the original docket of the judgment would be filed among the papers of the estate in the county in which the estate is being administered.

ID.—JURISDICTION OF SUPERIOR COURTS IN EQUITY COEXTENSIVE.—All of the superior courts have like original jurisdiction "in all cases in equity," and their process extends "to all parts of the state." The superior court of the city and county of San Francisco has the same jurisdiction in equity as the superior court of Alameda county, in which the estate is being administered; and if the action in equity could be maintained in the latter county, there is no reason why it may not be prosecuted in the former. So far as jurisdiction in equity is concerned, the two counties stand upon the same footing.

ID.—QUESTION OF CHANGE OF VENUE—RIGHT TO BRING ACTION IN AN-
OTHER COUNTY UNAFFECTED.—Even if the right should exist to have
the action in equity tried in Alameda county, such right is not to
be confounded with the right to bring the action in the superior
court of the city and county of San Francisco.

ID.—POWER IN EQUITY TO ENFORCE RELIEF—PARTIES BEFORE COURT—
INJUNCTION AGAINST DIVERSION OF STOCK—POWER NOT LIMITED
BY PROVISION FOR JUDGMENT.—Where the action in "equity" involves
the assumption that the estate of plaintiff's deceased copartner
will be shown to be indebted to plaintiff and his assignor, another
copartner, on a fair accounting, in a large sum of money, that the
inventoried estate is wholly insufficient to meet the claim, and that
the administrator and heirs who are before the court have possession
of corporate stock of great value, which rightfully belongs to the
estate, and should be applied to the judgment upon such accounting,
and that its diversion therefrom should be enjoined, it cannot be
maintained that such scheme must collapse and the injunction must
fall, by the limitation of the court's power under section 1504 of
the Code of Civil Procedure. The court's power in equity is not
limited by that section.

ID.—POWER OF EQUITY TO MAKE RELIEF COMPLETE—ORDER FOR SALE
OF STOCK AND DISPOSAL OF PROCEEDS.—When a court of equity has
once obtained jurisdiction, it will do complete justice by deciding
the whole case. It may order the sale of the shares of stock which
have been wrongfully placed in the custody of the administrator
and heirs, and their proceeds applied to the payment of the creditors
of the estate, including the plaintiff, when his claim to payment
is established; or it may order the administrator, who is a party
defendant before the court, to take possession of such shares of
stock, and to sell the same and apply the proceeds to the payment
of creditors of the estate. The court will not be left with its hands
tied, without power to make any disposition of the stock to satisfy
the plaintiff's claim.

ID.—NATURE OF ACTION—NOT A CREDITOR'S BILL—PARTNERSHIP AC-
COUNTING—INCIDENTAL RELIEF.—The action cannot be strictly called
a creditor's bill; but it is an action in equity for an accounting of
the affairs of a partnership, which the administrator has no power
to adjust, and incidentally to cause property belonging to a deceased
partner to be subjected to administration for the benefit of plain-
tiff, as a creditor, and other creditors of the estate. The fact
that at the beginning of the action the plaintiff's claim was not
reduced to judgment cannot preclude incidental equitable relief to
prevent the diversion of such property, which the administrator and
heirs wrongfully claim as their own, since if the plaintiff was deprived
of access thereto he would be remediless.

ID.—LIMITED POWER OF PROBATE COURT—RELIEF IN EQUITY COURT.—
The superior court sitting in probate cannot go into an accounting

of a copartnership, nor determine the ownership of shares of stock which are as yet no part of the estate, and in respect of which the administrator refuses to take steps necessary to determine their ownership. The equity court alone can and will afford relief where the powers of the probate court are inadequate to do justice.

ID.—INJUNCTION JUSTIFIABLE—DISCRETION.—The injunction was justifiable where the facts show that by no other means could the property have been preserved to await the result of the accounting. Where an injunction is justifiable, the issuing of the writ is, in a large degree, a matter of discretion, which should be exercised in favor of the party most likely to be injured.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing to dissolve and vacate an order of injunction. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Aylett R. Cotton, and Aylett R. Cotton, Jr., for Appellant.

Peter F. Dunne, and C. H. Wilson, for Respondent.

CHIPMAN, P. J.—Injunction. Upon filing the complaint and executing a bond for $1,000, the court granted the prayer of the complaint for an injunction, further ordering that defendants show cause at a date named "why this order should not be continued in force until the further order of the court in the premises." Before the hearing thus ordered, defendant, Charles A. Warren, Jr., served and filed his motion to dissolve and vacate said order of injunction, based on the complaint in said action and upon the ground that "said complaint does not state or show that any ground or cause exists or has existed for the making of said order or for the granting of any injunction in this action."

At the hearing the court ordered: "1. That the demurrers to complaint be overruled ten days to answer; 2. Motion to dissolve injunction denied; 3. Motion to appoint receiver denied without prejudice to renewal of motion." It appears from the record that "Said order included the decision of said court upon motions of other parties, as well as said motion of said Charles A. Warren, Jr., and also decisions of demurrers."

Defendant, Charles A. Warren, Jr., excepted to the order denying his motion "to dissolve said order of injunction and

18 Cal. App.—42

refusing to dissolve said order of injunction as to him." He alone appeals "from the order made and entered . . . refusing to dissolve the injunction granted on the twenty-seventh day of January, 1910, . . . and denying said defendant's motion to dissolve said injunction."

The averments of the complaint are substantially as follows: That on March 1, 1903, Charles A. Warren, the defendant Buckman and plaintiff formed a partnership for the purpose of securing contracts from the United States government and performing said contracts when secured, relating to what is known as the Truckee-Carson Project of Nevada, and that said partnership continued until the death of said Charles A. Warren, which is alleged to have occurred on December 24, 1908; that defendant C. A. Warren Company now is and, since April 2, 1903, has been a duly organized California corporation, as also is and has been the San Francisco Construction Company, since January 8, 1900; that from the beginning of said partnership to its termination aforesaid "the two corporations last mentioned were controlled, operated and used by such partnership to facilitate, carry on and advance the affairs, work and business of said partnership, and acting for and under the direction of said copartners, did duly make to the Secretary of the Interior of the United States certain proposals for doing the construction work in connection with the aforesaid Truckee-Carson Project of Nevada"; that said proposals were accepted and pursuant thereto said corporation, C. A. Warren & Company, "for the purposes aforesaid and acting for and under the direction of said copartners, and as an instrument of said partnership to facilitate and carry on its business, did duly make and enter into a certain contract with the United States," engaging to perform certain work relating to said project, for which the said United States agreed to pay said corporation certain sums of money and that said corporation fully completed said work. Then follow averments that the said corporation, the said San Francisco Construction Company, for purposes as above averred, and acting for said copartnership as above averred, entered into another contract with the United States to further prosecute the work on said project, for which the said United States agreed to pay said corporation certain sums of money, and that "said

copartners, doing business as such in the name of said corporation, San Francisco Construction Company, did duly . . . complete the contract last aforesaid." Then follow also averments relating to a third contract entered into by said last-named corporation for like purposes as above set forth and as in other alleged cases, "acting for and under the direction of said copartners," and "for the purpose of facilitating, carrying on and advancing the affairs, work and business of said partnership"; that defendant, Charles A. Warren, Jr., was duly appointed administrator of the estate of Charles A. Warren, deceased, on January 15, 1909; that defendant Buckman assigned to plaintiff all his right and interest in and to all demands against the estate of Warren, deceased, but now claims some interest in the assets of said partnership; that there has never been an accounting between said copartners as to its business, nor has there been an accounting between the surviving members and defendant Charles A. Warren, Jr., the administrator of said estate of said deceased copartner; "that should an accounting be had of the aforesaid copartnership matters and business, it will be found and ascertained that a large sum of money, to wit, the sum of about $150,000 is due from the estate of said Charles A. Warren, deceased, on account of said copartnership matters and business, to this plaintiff"; that plaintiff has demanded of defendant Warren, Jr., administrator of the estate of Warren, deceased, and of defendant Buckman, an accounting of said copartnership business, but said defendants have refused and still refuse to make such accounting; that plaintiff, within the time allowed by law therefor, prepared his contingent claim against the estate of said deceased in which was recited "substantially all the matters aforesaid and stated the particulars of said contingent claim, and demanded that an accounting be had forthwith between this plaintiff and the said administrator of the estate of Charles A. Warren, deceased, and that provision be made for the payment of such sum as may be found to be due this plaintiff on such accounting, and that such payment be made from and out of the assets of the estate of said deceased"; that said administrator rejected said contingent claim; that said administrator has duly returned an inventory of said estate showing the same to be of the value of $8,798.66; that said inventory does not show the true value and character

of the entire estate left by deceased; that the said corporation, the Charles A. Warren Company, had a capital stock of $100,000, divided into 100,000 shares of the par value of $1 each, of which deceased, at the time of his death, was the owner of 60,416 shares; that, immediately before his death, said Warren delivered all his said shares to one Haskell, with instructions that, in the event of the death of said Charles A. Warren, Haskell "should then, and in that event only, deliver said capital stock to the defendants herein, William T. Warren, Charles A. Warren, Jr. and Henry O. Warren in equal shares"; but should he survive his then illness, said capital stock was to remain the property of said Charles A. Warren, "who was to repossess the same and enjoy the income thereof and have all the rights and benefits arising from the ownership thereof"; that, after the death of said Warren, said capital stock was delivered by said Haskell as directed by said Warren, and the said transferees aforesaid are now the holders thereof, and that the defendants Bertha and Claudine Warren claim some interest therein; "that said capital stock is of great value, to wit, of the value of about $1,000,000, and that the same is a part of the estate of said Charles A. Warren, deceased, and is subject to the payment of the debts proven and allowed against said estate"; that said estate of Warren, deceased, and said William T., Charles A., Jr., Henry O., Bertha and Claudine Warren "have not sufficient property out of which to pay plaintiff's claim, unless resort be had to that represented by the capital stock of said Charles A. Warren Company; that, except for said shares of capital stock and the value thereof, the said Warrens [naming them] are each and all of them financially irresponsible"; that they have threatened to sell said shares, in which event "they and each of them would be wholly unable to deliver to Charles A. Warren, Jr., administrator of the estate of Charles A. Warren, deceased, sufficient of the property of said deceased or sufficient money or property of any kind to pay the amount due from said estate to this plaintiff on his aforesaid claim, and that should said sale or disposition of said stock be made, this plaintiff "would be wholly without remedy in the premises and would suffer great or irreparable injury"; that defendant, William T. Warren, was by order of court duly appointed

guardian of the person and estate of defendant Henry O. Warren, a minor.

Plaintiff prays for an accounting of all matters relating to said copartnership; for judgment against said administrator for the amount that may be due plaintiff on such accounting; for a writ of injunction enjoining the sale of said capital stock; for the appointment of a receiver and such further relief as may be just.

At the hearing of the motion there were read the affidavits of plaintiff and one Church. Plaintiff's affidavit is to like effect as the complaint in the action; he also deposes that the inventory returned by said administrator does not include said shares of said capital stock; that, in the transfer of said stock to said Haskell, "the said Warren did not part with all dominion over the same or pass the same beyond his control for all time, and, furthermore, that said gift was subject to defeasance in favor of said Warren's creditors, and that as to this affiant, a creditor of said Warren, said gift of said capital stock is wholly void." The affidavit of Church, used at the hearing of the motion, was to the effect that he was a director of the Charles A. Warren Company from its organization to the death of Charles A. Warren; that the affairs of the corporation were "controlled, directed and managed wholly and entirely by said Charles A. Warren"; that, with the exception of the five shares each issued to the directors, Warren controlled all the shares; that "the business, property and affairs of said Charles A. Warren were, from the time of the incorporation of said corporation to the twenty-fourth day of December, 1908, from time to time during said period, transferred from said Charles A. Warren to said corporation"; that "at all times from the date of the incorporation thereof to the time of his death, he, the said Charles A. Warren, received the entire income of said corporation and used and disposed of the same as his personal property and according to his personal will and wishes"; that no dividends were declared, but that all of the funds of the corporation and all its earnings were personally controlled by said Warren; that, "according to the best judgment and knowledge of this affiant, all the property owned by said corporation and all the stock thereof were a part and portion of the estate of Charles A. Warren at the time of his death, on or about December 24, 1908."

The estate of Charles A. Warren, deceased, is being administered in the superior court, sitting in probate, in Alameda county, and this action was commenced and is pending in the superior court of the city and county of San Francisco.

Appellant contends that, "under section 1504, Code of Civil Procedure, in an action of this nature, the court has no jurisdiction to provide for the payment of any judgment, and hence no jurisdiction to make any investigation as to what property may belong to an estate, or to make an order enjoining the disposition of, or appointing a receiver of, any property." The argument seems to be that, under section 1504, *supra,* the judgment only establishes the claim in the same manner as if allowed by the administrator, and the judgment must be that the administrator pay in due course of administration; "that there is no administration running its course in the city and county of San Francisco, where this action is, and it is only the superior court in Alameda county, in which the estate is being administered, that can make application of the assets of the estate so as to pay in the due course of administration"; that the superior court of the city and county of San Francisco "has no jurisdiction to take action, even after judgment, to enforce payment of any judgment; and surely has no jurisdiction to issue an injunction before judgment to restrain the disposition of property"; that a judgment upon a rejected claim is no more effective than a claim allowed by an administrator or the judge; citing *Hall* v. *Cayot,* 141 Cal. 13, 16, [74 Pac. 299]. Appellant then takes up the general proposition, to which the brief is mainly devoted, that "it is contrary to all the authorities to attempt to interfere, by injunction or otherwise, with the disposition of property before judgment is obtained, unless the plaintiff has some lien on the property or interest therein," and none is here alleged. In support of this contention, adjudicated cases and opinions of text-writers are cited from which the general rule is deducible that a simple contract creditor, or a creditor at large, whose claims are not yet reduced to judgment, cannot maintain a creditor's bill. (Citing 2 High on Injunctions, 4th ed., secs. 406, 1403; 6 Pomeroy's Equity Jurisprudence, sec. 882; *Ohm* v. *Superior Court,* 85 Cal. 545, [20 Am. St. Rep. 245, 26 Pac. 244] [approved in *Field, Admr.,* v. *Andrada,* 106 Cal. 107,

[39 Pac. 323] ; and *Shiels* v. *Nathan,* 12 Cal. App. 604, [108 Pac. 34].)

On the question of jurisdiction generally, the code provides that superior courts "have original jurisdiction in all cases in equity" (Code Civ. Proc., sec. 76) ; and their process extends "to all parts of the state." (Id., sec. 78.) The superior court of the city and county of San Francisco has the same jurisdiction as the superior court of Alameda county, and if the action can be maintained in the latter court, we can see no reason why it may not be prosecuted in the former. The suggested difficulty of enforcing a judgment, should plaintiff recover, in the San Francisco court, is fanciful rather than real. If, on the trial, anything is found to be due plaintiff by the estate of Warren, deceased, it is to be presumed that the court would be guided by section 1504, Code of Civil Procedure, in formulating its judgment, whereupon "a certified transcript of the original docket of the judgment" would be "filed among the papers of the estate in court," i, e., in the Alameda county court, as the said section provides. Precisely the same course would be pursued if the action were to be tried in the superior court of Alameda county. The suggestion that there "is no administration running its course" in the San Francisco court, where this action is pending, and that it is only the Alameda court "that can make application of the assets of the estate so as to pay in due course of administration," does not, in our opinion, complicate the case or strengthen appellant's position. The superior court as now constituted has jurisdiction, as we have seen, in all cases in equity (Code Civ. Proc., subd. 1, sec. 76), and, by the same section, it is given jurisdiction in civil actions of the class therein described (subdivision 2) ; in all cases at law as defined (subdivision 3) ; of still other actions mentioned and "of all matters of probate" (subdivision 4). In exercise of its jurisdiction "in cases in equity," such as the one here, and its jurisdiction in "matters of probate," such as administering the Warren estate, the proceedings of the superior court are as distinct and as dissociated as if there were two separate and different courts exercising these powers. So far, therefore, as the question of jurisdiction is concerned, the superior courts of the two counties stand on the same footing. The right to have the case transferred for trial to the Alameda court, if

such right exists, is not to be confounded with the right to bring the action in the city and county of San Francisco.

In his reply brief, appellant complains that respondent has not pointed out any way of escaping the supposed dilemma in which he may find himself should he secure judgment for some amount which, when secured, the court cannot enforce; that counsel should have explained "what would be the fate of the injunction in this case when such judgment would be made, inasmuch as the court's power to act in the case would terminate on making such judgment; and have explained what would or could have been accomplished by the issuing of an injunction restraining the disposition of the property." As these supposed difficulties are advanced in aid of the argument that the court had no power to make the order, we cannot overlook them, though unnoticed by respondent.

The action proceeds on the assumption that the estate of plaintiff's copartner, Warren, will be shown to be indebted to him, on a fair accounting, in a large sum of money; that the property of the estate returned by the administrator in his inventory is wholly insufficient to meet this claim; that certain of the defendants, among them the administrator himself, hold certain property, to wit, the alleged shares in the Warren corporation, which rightfully belongs to the estate and should be applied to discharge the debts of the estate, and should be turned over to the estate for the benefit of its creditors, plaintiff among others. The administrator is a party defendant in the action, and also in his individual capacity; so also are all the persons having any claim upon the subject of the action—the said corporation shares. The court may or may not find it necessary to appoint a receiver, but should such appointment be made, we can see no such dire result ensuing as appellant predicts—that, upon the court's allowing plaintiff's claim, "the whole scheme would collapse . . . , as the power of the court under section 1504 (Code Civ. Proc.) would thereupon be exhausted; and the receiver would be left stranded with the stock in his possession without having a court to protect him. . . . The court would be without power to make any disposition of the stock to satisfy the claim." Appellant's error is in assuming that the power of the court is limited by section 1504, Code of Civil Procedure. "When a court of equity has once obtained jurisdiction, it will do com-

plete justice by deciding the whole case." (*Watson* v. *Sutro,* 86 Cal. 500, 528, [24 Pac. 172, 25 Pac. 64] ; Van Zile on Equity Pleading and Practice, sec. 11.) Just what course the court may pursue, in its disposition of the said corporation shares, after having found that they belong to the estate, need not be anticipated. It may order their sale and the proceeds to be paid to the administrator to be applied to the payment of creditors of the estate (*Emmons* v. *Barton,* 109 Cal. 662, 668, [42 Pac. 303] ; *Shiels* v. *Nathan,* 12 Cal. App. 604, [108 Pac. 34]) ; or it may direct the defendant, administrator of the estate, to take possession of them as property of the estate and dispose of them for the benefit of the creditors of the estate. We fail to see how a receiver, if appointed, is in danger of being "stranded" or the court left with its hands tied, "without power to make any disposition of the stock to satisfy the claim" of plaintiff.

We pass to the proposition advanced by appellant, to wit : That plaintiff cannot maintain the action because he has not yet reduced his claim to judgment. It may be conceded at once that the general rule as to a creditor's bill is as claimed by appellant. But, like many other salutary rules, it has its exceptions, and, we think, the present case presents an example where other rules, firmly established by the courts, come into play and remove it from the operation of the general rule. Indeed, the action cannot strictly be called a creditor's bill ; it is an action primarily for an accounting and incidentally to cause property belonging to a deceased partner to be subjected to administration for the benefit of creditors. The case here is that of an administrator who is administering the estate of a deceased partner of a copartnership ; he has no power as such administrator to settle the affairs of the partnership ; the surviving partners are charged with that duty (Code Civ. Proc., sec. 1585) ; averments in the complaint show the necessity for an accounting, a suit in equity (*Smith* v. *Smith,* 88 Cal. 572, [26 Pac. 356]) ; and it cannot be affected by an action at law ; the third partner, Buckman, has assigned to plaintiff all his interest in any claim against their copartner's estate ; it is alleged that there is valuable property belonging to the estate of the deceased partner which the administrator refuses to recognize as such or to include it in his inventory— property which by gift *causa mortis,* deceased caused to be

placed in the hands of certain of the defendants; the adminis-
trator is one of the transferees of this property, claiming an
interest in it adversely to plaintiff and other creditors; in the
very nature of the situation he cannot, as administrator, sue
himself as such claimant, and assuredly would not, if he could,
for he denies all claim of the estate to the property; he in
common with his cotransferees, it is alleged, threatens to, and
will, if not restrained, so dispose of this property as to prevent
plaintiff and other of the creditors of the deceased partner
from resorting to it for the payment of their claims; that the
estate, shorn of this property, is wholly insufficient to meet
the demands of creditors, and, finally, the defendants "are
each and all of them financially irresponsible, except for said
shares of the capital stock of said corporation, and the income
and value thereof."

In *Case* v. *Beauregard*, 101 U. S. 690, [25 L. Ed. 1004], the
court had the rule contended for by appellant under consid-
eration. Said the court: "But, after all, the judgment and
fruitless execution are only evidence that his legal remedies
have been exhausted, or that he is without remedy at law.
They are not the only possible means of proof. The necessity
of resort to a court of equity may be made otherwise to appear.
Accordingly, the rule, though general, is not without many
exceptions. Neither law nor equity requires a meaningless
form, *'Bona, sed impossibilia non cogit lex.'* "

"Where the claim of complaint is purely equitable, and
such as the chancellor will take cognizance of in the first in-
stance, he will go the entire extent and inquire into obstruc-
tions in the road of enforcing the demand; and the complain-
ant, therefore, when he goes into equity to assert and liquidate
his claim, may, in addition to the assertion of his claim, ask re-
lief against the fraudulent acts of the debtor in attempting to
place his estate beyond the reach of creditors." (5 Ency. of
Pl. & Pr., p. 463.) The rule "is not so strict as to deny to
a party the interposition of the equity power of the court when,
the situation is such as to render impossible the aid of a court
of law in taking the preliminary steps ordinarily treated as
a condition precedent to the application for equitable relief."
(20 Cyc., pp. 692, 701.)

The superior court, sitting in probate, cannot go into an
accounting of the copartnership, nor determine the ownership

of the shares of the Warren corporation, for as yet they form no part of the estate and the administrator refuses to take the steps necessary to determine their ownership. The equity court alone can and will afford relief where the powers of the probate court are inadequate to do justice. (1 Woerner's American Law of Administration, 2d ed., p. *356.) Plaintiff should not be required to resort to a court at law where he could obtain no remedy. In *Emmons* v. *Barton*, 109 Cal. 662, [42 Pac. 303], it was held that "ordinarily an action to recover property fraudulently conveyed by a decedent in his lifetime should be brought by his executor or administrator, and such an action by a creditor will not lie, unless he shows that he has exhausted all means to procure such an action to be brought by the proper person; but where the alleged grantee is the executrix, a suit in equity will lie in favor of the creditor to set aside the fraudulent conveyance." (Syllabus.) Appellant distinguishes this case from the one here, because in the case cited the creditor had an allowed claim against the estate. But plaintiff did all he could to secure the allowance of his claim and it was rejected. The administrator here is one of the grantees of the property in question. We do not think, under the circumstances here appearing, that plaintiff was called upon to do more than he did to entitle him to bring the action, which is in fact the only adequate remedy available to him. It was held in the Emmons case, *supra,* that sections 1589 and 1590, Code of Civil Procedure, which provide for the commencement of actions by the administrator or executor, in cases such as this, do not furnish the only remedy. Said the court: "There may be cases in which the statutory proceedings would not afford an adequate remedy— 'exceptional cases in which it appears that equity must be invoked because legal remedies are unavailing.' (*Herrlich* v. *Kauffman,* 99 Cal. 271, [37 Am. St. Rep. 50, 33 Pac. 857].) In such case the code provisions may be departed from, for it is the province of equity to relieve where legal remedies fail. . . . A demand upon the appellant to bring the suit would have been fruitless."

The facts, in our opinion, warranted the issuing of the injunction. By no other means could the property have been preserved to await the result of the accounting. (Code Civ. Proc., sec. 526; Civ. Code, sec. 3422; 3 Pomeroy's Equity

Jurisprudence, 1st ed., sec. 1339.) Where an injunction is justifiable, the issuing of the writ is, in a large degree, a matter of discretion, "and should be exercised in favor of the party most likely to be injured." (*Paige* v. *Akins,* 112 Cal. 401, 412, [44 Pac. 666].)

The order is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 6, 1912.