[Civ. No. 4809. First Appellate District, Division One.—December 29, 1924.]

## EDWIN H. WILLIAMS, Appellant, v. FRANCES E. COLEMAN, etc., et al., Respondents.

[1] PLEADING—COMPLAINT—DEMURRER.—In considering the sufficiency of a complaint, demurrer to which is sustained, the allegations of the complaint must be deemed to be true.

[2] SPECIFIC PERFORMANCE—AGREEMENT TO PAY PROMISSORY NOTE—TRANSFER OF PROPERTY TO AVOID PAYMENT — FRAUD — EQUITY.—Where a husband, in consideration of the execution to him of a bill of sale by the maker of a promissory note, agreed in writing with the maker to pay said note and to hold the latter harmless thereon, and, after making some partial payments on said note, fraudulently transferred all his property to his wife for the purpose of avoiding payment of the balance due on the note and of fastening the responsibility of payment on said maker, and the wife was a party to the fraud, the maker was justified in resorting to an action in equity against the husband and his wife to compel the specific performance of the written contract.

[3] ID.—CONTRACTS — SURETIES. — The husband having assumed the payment of the promissory note, became, so far as the maker thereof was concerned, the principal debtor, and said maker the surety; and the maker as surety was empowered to compel the husband as principal to perform the obligation when due, and was not required to defer action until the payee of the note had obtained judgment against the maker, or until the latter had paid the debt.

[4] ID.—EQUITY.—Equity will interpose to decree specific performance of express contracts when no actual injury has as yet been sustained, but is only apprehended from the peculiar relations of the parties.

[5] ID.—EQUITY — CONTRACTS — PLEADING — FRAUD — TRUSTS.—The maker's action against the wife individually and as representative of deceased husband's estate, being an equitable proceeding to enforce the plain obligation of an express contract, and to subject the husband's property, which it is claimed was fraudulently diverted from the husband's estate, to the fulfillment of that obligation, the inclusion in the complaint of charges of fraud regarding transfer of the husband's property, of allegations that the wife held a trust title to the real property, and of the averments that said property constituted a part of the estate of the husband, did not have the effect of converting the form of action into a creditor's bill nor set up new and separate causes of action.

[6] ID.—FRAUD—TRUSTS—PLEADING.—The allegations in the maker's complaint relating to fraud and the creation of a trust title in the wife as to property claimed to have been fraudulently transferred to her were sufficient for the purposes for which they were made.

[7] ID.—PLEADING. — The maker's complaint filed against the wife individually and as the executrix of her deceased husband's estate was not defective because the amended and supplemental portions thereof were not separately stated, particularly where it was evident from the complaint that the supplemental portion thereof was confined to facts occurring after the death of the husband.

---

(1) 31 Cyc., p. 333, n. 76.    (2) 36 Cyc., p. 569, n. 84 New.    (3) 32 Cyc., p. 35, n. 86, p. 245, n. 17, p. 248, n. 40.    (4) 32 Cyc., p. 569, n. 84.    (5) 36 Cyc., p. 773, n. 52.    (6) 27 C. J., p. 772, n. 87; 36 Cyc., p. 773, n. 52.    (7) 31 Cyc., p. 446, n. 42.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. A. Beasly, Judge. Reversed.

The facts are stated in the opinion of the court.

Edwin H. Williams for Appellant.

Waldo F. Postel for Respondents.

KNIGHT, J.—Defendants' demurrers to plaintiff's second amended and supplemental complaint were sustained, with leave to amend. Plaintiff declined to amend and thereafter judgment was entered in favor of defendants, from which judgment plaintiff has appealed.

The action was originally commenced against Robert L. Coleman and Frances E. Coleman, his wife. Subsequently Coleman died, and his wife, who was appointed executrix of his will, was, as such executrix, brought in as a party defendant.

The facts, as alleged in the second amended and supplemental complaint, are, in substance, as follows: On January 1, 1916, appellant executed and delivered his promissory note to one Max Mamlock for the sum of $11,000, payable in monthly installments of $200, without interest. Thereafter, on January 25, 1916, Coleman executed and delivered to appellant the following instrument:

"San Francisco, January 25, 1916.

"For and in consideration of the execution to me of a Bill of Sale of even date herewith I hereby undertake and agree that I will pay to Max Mamlock that certain promissory note, dated January 1st, 1916, in the principal sum of Eleven Thousand Dollars ($11,000.00) and signed by Edwin H. Williams, and that I will hold Edwin H. Williams harmless from any and all loss, damage or expense by reason of his having executed said promissory note in favor of Max Mamlock. A copy of said note is hereto annexed and made a part hereof.

"(Signed) ROBERT L. COLEMAN."

Coleman paid the monthly installments of the Mamlock note as they fell due for eighteen months, paying in all the sum of $3,600, but thereafter failed to make payments. On September 13, 1917, Mamlock commenced suit against appellant and Coleman, to collect the balance due on the note, and both defendants were served with summons. Two days after the commencement of that suit, to wit, on September 15, 1917, appellant served Coleman with written notice apprising him of the commencement of said suit and demanding that he (Coleman) "appear and defend the same on behalf of the undersigned"; said notice further stated: "In the event of your failure so to do you will be held responsible for all damages resulting from your negligence." It is then alleged in said complaint that Coleman refused and neglected to defend said action on behalf of appellant "but up to the time of his death . . . sought by demurrer to have said action dismissed as to said defendant, decedent, Robert L. Coleman, and continued as to this plaintiff (appellant) only," and that since Coleman's death, his widow, as such executrix, has followed a like course. Allegations are then made relating to the death of Coleman, the admission of his will to probate, and the appointment of his wife Frances E. Coleman as the executrix thereof; also, that in the petition for probate of the will "it was falsely and fraudulently alleged that said Robert L. Coleman left estate valued at less than one hundred dollars"; that appellant in due course presented a claim against said estate and upon information and belief it is alleged that the claim was rejected. Said complaint then charges that following the execution and delivery of the

"indemnity agreement" of January 25, 1916, Coleman transferred the property standing in his name to his wife, "without any consideration," and "for the purpose of concealing and sequestering the same" so as to leave no assets with which to meet his obligations, and "so that it would be impossible to enforce any money judgment which might be rendered against him" and particularly for the purpose of defeating the Mamlock indebtedness; that after said transfers were made the said Coleman "became, and was, and up to the time of his death remained insolvent." Averments then follow: "That said Frances E. Coleman at the time of the death of said Robert L. Coleman and at all times herein mentioned held in trust for said Robert E. Coleman, for said purposes, real property situate in the County of Santa Clara," which is particularly described in said complaint; that the interest of said Coleman, in said property, at the time of his death and prior thereto, amounted in value to upward of $15,000, "and that said property was at the time of his death held for him by said Frances E. Coleman for the purpose of avoiding and defeating the claims of creditors and particularly the claim of plaintiff against him." It is further alleged that since January 25, 1916, Coleman transferred to his wife, without consideration, "large amounts of personal property with intent and purpose to hinder, delay and defraud the creditors of said Robert L. Coleman, and especially plaintiff; that among other items of personal property so transferred" was the sum of $15,000, received as the proceeds of a sale of a taxicab business; that for like purpose Coleman from time to time deposited large sums of money in the bank, believed by plaintiff to be $15,000, to the credit of his wife's account, and that she received, accepted, converted, and used the same. Plaintiff then goes on to allege, upon information and belief, that unless the said Frances E. Coleman is restrained by the order of court from doing so, she will "transfer and encumber the property so held in trust for said Robert L. Coleman and put the same beyond the reach of his creditors and that plaintiff has no adequate remedy at law." Lastly, plaintiff alleges that he has incurred attorneys' fees in said matter which he alleges are of the reasonable value of $250.

The prayer of said complaint is that the court decree, first, that said "Frances E. Coleman, executrix . . . exonerate

plaintiff from the said liability of the said Max Mamlock, and direct said Frances E. Coleman, executrix, to pay the said amount due on said instrument of indemnity, and to pay the installments'' that shall thereafter become due. Second, that said Frances E. Coleman be directed ''to promptly pay each and all the installments of said note as the same come due, and in that behalf to render the plaintiff herein good and ample security for the faithful performance'' of said obligation. Third, ''that said Frances E. Coleman, individually be declared trustee of said Frances E. Coleman, executrix . . . and she be restrained from transferring, encumbering or taking out of the jurisdiction of the court, any of the property held by her in trust for said Robert L. Coleman.'' Fourth, for general relief, and costs.

The defendant Frances E. Coleman interposed two demurrers, substantially the same in form, one being filed as an individual defendant, and the other in her capacity as executrix. The demurrers are lengthy, embodying twelve separate general grounds besides eleven assignments of ambiguity. The record does not disclose the particular grounds upon which the demurrers were sustained, but we assume they were the ones now stressed by respondent on appeal, and to those grounds we have given our attention.

We believe the demurrers should have been overruled and the defendants required to answer. [1] In a proceeding on demurrer, such as this, the allegations of the complaint must, of course, be deemed to be true. [2] Considering the facts alleged from that viewpoint, it appears that plaintiff made a bill of sale to Coleman in consideration for which Coleman agreed in writing to relieve plaintiff from the payment of the Mamlock debt. Afterward Coleman, for the very purpose of avoiding such written obligation, fraudulently disposed of and sequestered all his property by transferring the same to his wife, who was a party to the fraud and who at the time of the commencement of this action still held title to the same. Coleman then ceased making further payment on the Mamlock debt and Mamlock sued to collect the balance due. Although obligated in writing to hold plaintiff harmless from said debt, Coleman, so the complaint alleges, attempted to relieve himself from the effect of the Mamlock suit and fasten the responsibility thereof upon plaintiff. Surely, under such circumstances, plaintiff was entitled to

relief, and if unable to secure it through an action at law, was justified in resorting to equity to compel the specific performance of the Coleman contract.

[3] Respondents contend that plaintiff was not legally authorized to commence proceedings against Coleman until Mamlock had obtained a judgment against plaintiff, or until plaintiff had paid the debt. The law does not uphold such contention. Coleman having assumed the payment of the Mamlock debt, became, so far as plaintiff was concerned, the principal debtor, and plaintiff the surety (*Roberts* v. *Fitzallen,* 120 Cal. 482 [52 Pac. 818]; *Hopkins* v. *Warner,* 109 Cal. 133 [41 Pac. 868]; *Tulare Bank* v. *Madden,* 109 Cal. 312 [41 Pac. 1092]; 1 Jones on Mortgages, sec. 11), and plaintiff as surety was empowered to compel Coleman as principal to perform the obligation when due (sec. 2846, Civ. Code), and was not required to defer action until Mamlock had obtained judgment against plaintiff (5 Pomeroy's Equity Jurisprudence, sec. 2342; *White* v. *Schader,* 185 Cal. 606 [21 A. L. R. 499, 198 Pac. 19]), or until plaintiff had paid the debt. (*Kreling* v. *Kreling,* 118 Cal. 413 [50 Pac. 546]; *Abell* v. *Coons,* 7 Cal. 105 [68 Am. Dec. 229].)    [4] It is a well-established principle that equity will interpose to decree specific performance of express contracts when no actual injury has as yet been sustained, but is only apprehended from the peculiar relations of the parties. (2 Story's Equity Jurisprudence, 14th ed., sec. 1011.) Furthermore, the Civil Code expressly provides (sec. 2778, subd. 1) that "upon an indemnity against liability, expressly or in equivalent terms, the person indemnified is entitled to recover upon becoming liable." Plaintiff in this action is not seeking a money judgment against defendants for the amount of the Mamlock debt, but asks only that the contract be performed by Coleman; consequently subdivision 2 of said section 2778 of the Civil Code, to which we have been cited by respondents is not applicable.

[5] We are also of the opinion that the inclusion in the complaint of the charges of the fraud regarding transfer of the real and personal property, the allegations that Frances E. Coleman held a trust title to the real property and the averments that said property constituted a part of the estate of her deceased husband, does not have the effect of converting the form of action into a creditor's bill nor of set-

ting up new and separate causes of action. There is but the
one cause of action stated—an equitable proceeding—having
for its sole object the enforcement of the plain obligation of
an express contract, and to subject the promisor's property,
which it is claimed was fraudulently diverted from the
promisor's estate, to the fulfillment of that obligation. The
form of action here followed was upheld in *Raisch* v. *Warren,*
18 Cal. App. 655 [124 Pac. 95]. While that case differs
from the instant one in that the proceeding there was prima-
rily for an accounting and in which there was no fraud
charged concerning the transfer of the property, these differ-
ences are not material. Both proceedings are equitable ones,
brought to cause the property belonging to deceased persons
to be subjected to the payment of their debts. Indeed, the
element of fraud in the instant case adds more support to
plaintiff's cause of action. Quoting approvingly from En-
cyclopedia of Pleading and Practice and from Cyc., the court
in *Raisch* v. *Warren* says: "Where the claim of complainant
is purely equitable, and such as the chancellor will take cog-
nizance of in the first instance, he will go the entire extent
and inquire into obstructions in the road of enforcing the
demand; and the complainant, therefore, when he goes into
equity to assert and liquidate his claim, may, in addition to
the assertion of his claim, ask relief against the fraudulent
acts of the debtor in attempting to place his estate beyond
the reach of creditors. (5 Ency. of Pl. & Pr., p. 463.) The
rule "is not so strict as to deny to a party the interposition
of the equity power of the court when the situation is such
as to render impossible the aid of a court of law in taking
the preliminary steps ordinarily treated as a condition prece-
dent to the application for equitable relief.' (20 Cyc., pp.
692, 701.)" The principles stated in that case also dispose
of respondents contention that plaintiff's suit is not main-
tainable until his claim has been reduced to judgment.

[6] The allegations of fraud and of the creation of a
trust title in Mrs. Coleman we think are sufficient for the
purposes for which they are made. Plaintiff does not seek
as the ultimate object of this suit to set aside deeds and
other transfers, nor to create a trust in the technical sense
represented by respondents, but, as before stated, demands
that the defendant, individually, as the present title holder
of the property and as party to the fraud, and as executrix
of the will of her deceased husband, subject the property

now held by her, which it is claimed legally and morally belongs to, but was fraudulently diverted from, the decedent's estate, to the fulfillment of the decedent's legal obligations. What disposition the court may require defendant to make of said property, in the event that plaintiff's suit prevails, is a question that need not be answered at this time. As was said in *Raisch* v. *Warren, supra:* " 'When a court of equity has once obtained jurisdiction, it will do complete justice by deciding the whole case. (*Watson* v. *Sutro,* 86 Cal. 500, 528 [24 Pac. 172, 25 Pac. 64] ; Van Zile on Equity Pleading and Practice, sec. 11.) Just what course the court may pursue, in its disposition of the said corporation shares, after having found that they belong to the estate, need not be anticipated. It may order their sale and the proceeds to be paid to the administrator to be applied to the payment of creditors of the estate (*Emmons* v. *Barton,* 109 Cal. 662, 668 [42 Pac. 303] ; *Shiels* v. *Nathan,* 12 Cal. App. 604 [108 Pac. 34]) ; or it may direct the defendant, administrator of the estate, to take possession of them as property of the estate and dispose of them for the benefit of the creditors of the estate."
[7] Nor do we think the complaint is defective as respondent contends because the amended and supplemental portions thereof are not separately stated, particularly in view of the fact that it is evident from the complaint that the supplemental portion thereof is confined to those facts occurring after the death of Coleman. Of course the success of plaintiff's case ultimately depends upon the amount and value of proof he may offer upon trial, and upon the extent of relief the trial court in the exercise of its judgment, sitting as a court of equity, may grant. But as the complaint now stands, we think it legally sufficient in substance and form to entitle plaintiff to a trial thereon.

The judgment is reversed, with directions to the trial court to overrule the demurrers, and to take such further proceedings as may be necessary to a final disposition of said action.

Tyler, P. J., and St. Sure, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1925.

All the Justices concurred.